**David WHATLEY et al., Appellants,**

v.

**CITY OF VIDALIA, Appellee.**

No. 24171.

United States Court of Appeals
Fifth Circuit.
July 11, 1968.

Richard B. Sobol, New Orleans, La., Alvin J. Bronstein, Jackson, Miss., for appellants.

Patrick A. McDonough, III, Vidalia, La., for appellee.

Before TUTTLE, THORNBERRY and GODBOLD, Circuit Judges.

TUTTLE, Circuit Judge:

Once again we are called upon to determine whether a state prosecution of Negro citizens allegedly engaged in a federally granted and protected right of encouraging others to register and vote is removable to the Federal District Court under the principles announced by the Supreme Court in State of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and as further elaborated in the City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L. Ed.2d 944.

The permissible scope of removal in light of Rachel and Peacock is concededly narrow. However, we have, in two cases this year, concluded that the right of removal of a state criminal prosecution has not been restricted by the Supreme Court to the small group of cases in which a state prosecution *for trespass* seeks to forbid the enjoyment of the right to equal accommodations guaranteed under Title II of the Civil Rights Act of 1964. See Wyche v. State of Louisiana, 5 Cir., 394 F.2d 927, and

Achtenberg et al. v. State of Mississippi et al., 5 Cir., 393 F.2d 468. In Wyche the charge was for aggravated burglary, whereas the removal petition alleged that the charge was a spurious one made by the state to punish the movant for entering a protected place of public accommodation. In Achtenberg the charge was "vagrancy," whereas the removal petition alleged that the conduct which was the basis of the charge was an effort to use a public library and a covered eating facility.

Here we have seventeen movants,[1] all of whom alleged in their removal petitions that they were "arrested by police officials of the city of Vidalia while peacefully engaged in activity that was designed to encourage voter registration and that is protected from prosecution by the Civil Rights Act of 1965, 42 U.S.C. § 1973i(b)." The arrests took place on September 7, 1966. The motions for removal were filed on September 12, 1966. The district court entered an order remanding the cases to the state court, citing as authority the Peacock decision by the United States Supreme Court. Because of factual differences in the asserted grounds of removal here from those in Peacock, a panel of this court granted appellant's motion for a stay of the order of remand pending appeal.

The principal factual difference here is that the removal petition, after alleging that the arrests were for acts done to encourage voter registration activity, expressly invoked Section 11(b) of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973i(b), *which statute had not been enacted and was, therefore, of course, not invoked by the movants in Peacock.* For the first time in 1965, Congress expressly prohibited any person, whether acting under color of law or otherwise, from intimidating, threatening or coercing any person "for urging or aiding any person to vote or attempt to vote."[2]

When the removal petitions were filed in the Peacock case, it was alleged that the persons arrested by the city of Greenwood were members of a civil rights group engaged in a drive to encourage Negro voter registration in Leflore County, Mississippi, and that "they were denied or could not enforce in the courts of the state rights under laws providing for the equal civil rights of citizens of the United States," 384 U.S. 808, 811, 86 S.Ct. 1800, 1803. At that time there was a statute which prohibited only the intimidating, threatening or coercing of any person "for the purpose of interfering with the right of such other person *to vote or to vote as he may choose*," (emphasis added), but not from intimidating, threatening or coerc-

1. It may not be amiss to note that, although the Supreme Court commented in the Rachel case on the great load of removal cases that would flow from an interpertation of the removal statute in the manner in which this court had construed it, see State of Georgia v. Rachel, 384 U.S. 780, 788, fn. 8, 86 S.Ct. 1783, 16 L.Ed.2d 925, and City of Greenwood v. Peacock, 384 U.S. 808, 832, 86 S.Ct. 1800, 16 L.Ed.2d 944, this appeal is somewhat typical in demonstrating that the statistics do not adequately present the true picture. This one docketed appeal in this court represents seventeen removal petitions. Most of the removal cases appealed to this court represented many, sometimes dozens, of individual cases. In each such instance all of the group were disposed of generally by a single order or judgment by the district court, and, similarly, all were disposed of by a single opinion or judgment by this court. The total docket numbers in this court representing appeals of this nature, thus, instead of amounting to 1079 in the Fifth Circuit, constituted a much smaller load. The appeals in this court were numbered by the tens rather than the hundreds.

2. This section provides as follows:
Sec. 1973i (b). INTIMIDATION, THREATS OR COERCION.
(b) No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, *or attempt to intimidate, threaten, or coerce* any person for urging or aiding any person to vote or attempt to vote. * * * "

ing any person *for urging or aiding any person to vote or attempt to vote.*

The Supreme Court having, in the Rachel case, determined that Section 1443(1) requires a showing "both that the right upon which they rely is a 'right under any law providing for \* \* equal civil rights' and that they are 'denied or cannot enforce' that right in the courts of [the state]," 384 U.S. 780, 788, 86 S.Ct. 1783, 1788, then proceeded to state the issue presented in the Peacock case:

"The fundamental claim in this case, then, is that a case for removal is made under Section 1443(1) upon a petition alleging: (1) that the defendants were arrested by state officers and charged with various offenses under state law because they were Negroes or because they were engaged in helping Negroes to assert their rights under federal equal civil rights laws, and that they are completely innocent of the charge against them \* \* \* The basic difference between this case and Rachel is thus immediately apparent. In Rachel the defendants relied on the specific provisions of a pre-emptive federal civil rights law—§§ 201(a) and 203(c) of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a(a) and 2000a-2(c) (1964 ed.) as construed in Hamm v. City of Rock Hill [379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300], supra—that, under the conditions alleged, gave them: (1) the federal statutory right to remain on the property of a restaurant proprietor after being ordered to leave, despite a state law making it a criminal offense not to leave, and (2) the further federal statutory right that no state should even attempt to prosecute them for their conduct. The Civil Rights Act of 1964 as construed in Hamm thus specifically and uniquely conferred upon the defendants an absolute right to 'violate' the explicit terms of the state criminal trespass law with impunity under the conditions alleged in the Rachel removal petition, and any attempt by the state to make them an-

swer in a court for this conceded 'violation' would directly deny their federal right 'in the courts of [the] state.' "

Then, in a footnote, (Fn. 25), the Court said:

"Section 203(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a)–2(c) (1964 ed.), the provision involved in Hamm v. City of Rock Hill, 379 U.S. 306, 310, 85 S.Ct. 384, 388, 13 L.Ed.2d 300, and State of Georgia v. Rachel, 384 U.S. at 793–794, 804–805, 86 S.Ct. [1783]. at 1790–1791, 1796–1797, explicitly provides that no person shall 'punish or attempt to punish any person for exercising or attempting to exercise any right or privilege' secured by the Public Accommodations Section of the Act. None of the federal statutes *invoked by the defendants in the present case* contains any such provision. See note 3 and note 7, supra." (Emphasis added.)

Footnote 3 in Greenwood, 384 U.S. 808, 811, 86 S.Ct. 1800, 1803, is here quoted in full:

"The removal petitions specifically invoked rights to freedom of speech, petition, and assembly under the First and Fourteenth Amendments to the Constitution, as well as additional rights under the Equal Protection, Due Process, and Privileges and Immunities Clauses of the Fourteenth Amendment. 42 U.S.C. § 1971(a) (1) (1964 ed.), which guarantees the right to vote, free from racial discrimination, provides:

'All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.'

42 U.S.C. § 1971(b) (1964 ed.) provides:

'No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose * * *.'

See also § 11(b) of the Voting Rights Act of 1965, 79 Stat. 443, 42 U.S.C. § 1973i(b) (1964 ed., Supp. I)." (Emphasis added.)

The last comment in the footnote quoted above, "See also Section 11(b) of the Voting Rights Act of 1965," refers to the *new* provision of the statute enacted in 1965 prohibiting any person from intimidating, threatening, coercing, or attempting to intimidate, threaten, or coerce any person *for urging or aiding any person* to vote or attempt to vote. The section cited above as Section 11(b) of the Voting Rights Act of 1965 is Section 1973i(b) of Title 42 U.S.C.

In the Peacock case the Supreme Court determined that the above quoted provision of 42 U.S.C.A. Section 1971(b) (footnote 3 of Peacock) meets the first requirement of Rachel—that is that the right upon which the movants rely is a "right under a law providing for equal civil rights," for in Peacock the Court said:

"A precise definition of the limitations of the phrase 'any law providing for * * * equal civil rights' in Section 1443(1) is not a matter that we need pursue to a conclusion, however, because we may proceed here on the premise that at least the two federal statutes specifically referred to in the removal petitions, 42 U.S.C. § 1971, and 42 U.S.C. § 1981, do qualify under the statutory definition."[3]

Thus, we come to the question whether the movants meet the second requirement, which is, that they alleged adequately that they are "denied or cannot enforce" their equal federal right in the state court of Louisiana. The Court found in Rachel that they had met this requirement, for, as the Court said:

"In the narrow circumstances of this case, *any* proceedings in the courts of the State will constitute a denial of the rights conferred by the Civil Rights Act of 1964, as construed in Hamm v. City of Rock Hill, if the allegations of the removal petition are true. The removal petition alleges, in effect, that the defendants refused to leave facilities of public accommodation, when ordered to do so solely for racial reasons, and that they are charged under a Georgia trespass statute that makes it a criminal offense to refuse to obey such an order. The Civil Rights Act of 1964, however, as Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, made clear, protects those who refuse to obey such an order not only from conviction in state courts, but from prosecution in those courts. Hamm emphasized the precise terms of § 203(c) that prohibit any 'attempt to punish' persons for exercising rights of equality conferred upon them by the Act. The explicit terms of that section compelled the conclusion that 'nonforcible attempts to gain admittance to or remain in establishments covered by the Act, are immunized from prosecution * * *.' 379 U.S., at 311, 85 S.Ct. [384] at 389. The 1964 Act therefore 'substitutes a right for a crime.' 379 U.S., at 314, 85 S.Ct. [384] at 390. Hence, if as alleged in the present removal petition, the defendants were asked to leave solely for racial reasons, then the mere pendency of the prosecutions enables the federal court to make the clear prediction that the defendants will be denied or cannot enforce in the courts of [the] State, the right to be free of any 'attempt to punish' them for protected activity. It is no answer in these circumstances that the defen-

---

3. We do not here deal with the provisions of 42 U.S.C. Section 1981.

dants might eventually prevail in the state court. The burden of having to defend the prosecutions is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964 as construed in Hamm v. City of Rock Hill, supra."

It has remained for others to comment on the prohibitory language of Section 1973i(b), and the manner in which it may be equated with the prohibitions of Section 203(c) of the Civil Rights Act of 1964 quoted above. In a concurring opinion in the case of State of North Carolina v. Hawkins, 4 Cir., 365 F.2d 559, Judge Sobeloff drew the parallel between the prohibition against prosecution contained in Section 203(c) of the Civil Rights Act and the prohibition against intimidation, threats and coercion contained in Section 1971(b), the earlier provision of the statute dealing only with the exercising of the right to vote. All that is said there is equally applicable to Section 1973i(b):

> "Section 203(c) of the Public Accommodation portion of the Civil Rights Act of 1964 (footnote omitted) —the basis for permitting removal in *Rachel*—provides that '[n]o person shall * * * (c) *punish or attempt to punish* any person for exercising or attempting to exercise any right or privilege secured by Section 2000a or 2000–1' [Equal Access to Public Accommodations] (footnote omitted). Section 1971(b) of the Voting Rights provisions employs a more general prohibition against *any* attempted intimidation, threats, or coercion by persons 'acting under color of law or

otherwise' (footnote omitted). Literal comparison of the two provisions suggests that § 1971(b) is a more, not less, sweeping prohibition of official acts of harassment against equal civil rights than the limited proscription of § 203(c), since 'attempts to punish' are only one means of coercing, threatening, or intimidating." [4] See also 80 Harvard L.Rev., 225.

This analysis of the prohibitory language of the Voting Rights statute, as contrasted with the prohibition against prosecutions in the Public Accommodations Section of the Civil Rights Act seems so accurate that it must be concluded that the Supreme Court's decision not to apply it to the case of the movants in Peacock rested on one of two different grounds. The first, and more apparent, is that this point was not urged upon the court. The movants in Peacock, having been successful in this court in their removal effort, and not having been made aware yet of the limitations upon the right expressed later by the Supreme Court in Rachel, relied, as pointed out by the Court in Peacock, on the general proposition that "the defendants were arrested by state officers and charged with various offenses under state law because they were Negroes or because they were engaged in helping Negroes assert their rights under federal equal civil rights laws, and that they are completely innocent of the charges against them." 384 U.S. 808, 826, 86 S. Ct. 1800, 1811. They did *not* rely upon any theory that was later announced by the Supreme Court in Rachel and Peacock as essential in such a case: that

4. In Hawkins, the removal attempt occurred prior to the enactment of the Civil Rights Act of 1965. Thus there was no specific provision prohibiting any person from intimidating, threatening, or coercing any person *for urging or aiding any person to vote or attempt to vote.* The court held that the Greenwood case, involving the provisions of the earlier statute, was controlling because the same statute was "invoked" as had been relied on in Greenwood. To be sure, the reasoning in the majority opinion in Haw-

kins runs counter to what we hold here. However, with deference we believe the concurring opinion is a more accurate statement of the underlying principles. Judge Sobeloff concurred in the judgment of remand because he felt bound by Greenwood. However, it must be remembered that the removal there could not "invoke" the later enacted statute which deals with the precise conduct in which these appellants, as well as Dr. Hawkins, were engaged.

the very act of prosecuting them for the protected activity would violate an express prohibition of the federal statute. Alternatively, the court may have concluded that Section 1971 did not cover the factual situation alleged in the removal complaint, that is, the assisting of others to register and vote, since this provision of the law was not enacted until Congress broadened the law in 1965 by adopting 1973i(b), and for this reason the protection of the prohibitory language that is now in the statute was not, because it could not be, *invoked* by the movants in Peacock. The present movants are not faced with this problem. Their removal petition expressly alleges that they were engaged in acts which were protected by the new statute. They have thus "invoked" a statute which on its face prohibits *any* intimidation, threat, or coercion, whether done by a public official or by a private individual, for engaging in the acts that Congress has given them the absolute right to carry out.

█ As we have said in Wyche and Achtenberg, it is unimportant what the state prosecuting officer may denominate the conduct of the movants, if, in fact, they are exercising a federally granted equal right.

The federal equal accommodations section of the Civil Rights Act did not create a right for anyone to engage in a "trespass" upon the premises of every hotel or restaurant owner in Georgia. It gave a right to persons to be free from denial of service in such institutions, if they were engaged in commerce as defined in the act, without regard to race or color. The only new right created was the right not to be prosecuted for trespass in Georgia where the state would otherwise prosecute for a refusal to leave the premises of one who denied access on the ground of race. Thus, in a removal petition such as Rachel, the district court would have to test the correctness of the removal petition's allegations that the denial of accommodations was on "racial grounds." Just so, here,

the district court will have to test the correctness of the allegation that these prosecutions were merely a handy name given by the state prosecutor for the federal preemptive right to engage in assisting others to register to vote. In either case, Congress has prohibited not only the conviction of a person for carrying on these activities, but, in the case of public accommodations, has expressly prohibited any person from *punishing* or *attempting to punish* any person for exercising these rights, and in the case of assisting others to vote, has prohibited anyone from *intimidating, threatening* or *coercing*. The Supreme Court has not held that these words do not comprehend spurious prosecutions for protected rights.

The allegations in the removal petitions here asserted rights that are now protected by the 1965 amendment to the Voting Rights Law—that is the assisting of others in registering to vote—and expressly *invoked* prohibitory language of Section 1973i(b) that on the face appears to be more rather than less of a prohibition of official acts of harassment than the limited proscription of "attempts to punish" held by the Court as sufficient to meet the second requirement in Rachel.

█ We conclude that, equally with the Rachel movants, these movants adequately stated facts upon which, if true, the courts can make "an equally firm prediction that [they] would be 'denied or cannot enforce' the specified federal rights in the state court." 384 U.S. 780, 804, 86 S.Ct. 1783, 1796.

The order of remand was in error; the judgment is reversed and the case is remanded to the District Court for appropriate hearing as provided for in State of Georgia v. Rachel, supra.

GODBOLD, Circuit Judge (specially concurring):

I concur in the conclusion that these cases must be remanded to the district court for evidentiary hearings. However, I point out that the federally-created

rights of 42 U.S.C.A. § 1973i(b) give protection against intimidating, threatening or coercing, or attempting to intimidate, threaten or coerce, "any person for voting or attempting to vote" and "any person for urging or aiding any person to vote or attempt to vote." The terms "vote" and "voting" are defined in 42 U.S.C.A. § 1973*l*(c) (1). The language of the petitions for removal quoted in the opinion of my brother judges is somewhat broader than the federally-protected rights created by § 1973i(b). Of course, the verbiage of the petitions cannot expand the rights that Congress has created, and the district court is bounded by the statutory language in determining whether the appellants' activities were protected activities. I do not understand that my brother judges propose to broaden the Congressional language.