**NEWS–TEXAN, INC., Plaintiff-Appellee, Cross-Appellant,**

**v.**

**The CITY OF GARLAND, TEXAS, et al., Defendants-Appellants Cross-Appellees.**

**No. 86–1572**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

April 13, 1987.

Charles M. Hinton, Jr., City Atty., Hermon L. Veness, Jr., Asst. City Atty., Garland, Tex., for City of Garland, Tex.

Thomas S. Leatherbury, John H. McElhaney, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for News-Texan, Inc.

Before CLARK, Chief Judge,
GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

This appeal by the City of Garland, Texas (the City) from the district court's remand primarily presents the question of whether the City's removal of the action was proper under the federal civil rights removal statute, 28 U.S.C. § 1443(2).

In the fall of 1984, the City began to search for a new city manager. News-Texan, Inc. (NTI), the local newspaper, asked the City to disclose the names of candidates for the post and "all other data relevant to the names that would be in possession of the city of Garland." When the City did not comply, NTI filed suit in state court in January 1985 asking that the information requested be declared public under the Texas Open Records Act, Tex.Rev.Civ.Stat. Ann. art. 6252–17a (Vernon Supp.1986), and that a writ of mandamus issue compelling the City to disclose this information.

On January 17, 1985, the day before the state hearing was scheduled, the City removed this case, alleging that removal was proper under 28 U.S.C. §§ 1443(2) and 1441(a)–(c). The state proceedings were held in abeyance. On January 22, NTI moved for remand and costs, but, that same day, the City Council called an emergency meeting and hired a new city manager.

More than two years later, NTI has yet to be heard in state court. Although the court below ordered this case remanded in July 1986, the City brought this appeal, advancing various theories it claims justify either our reversal of the remand or our dismissal of this case as moot.[1] The City proclaims that its theories "rely on logic and subtle nuance" and "lie on the frontier of the law governing removal of civil rights cases." Paradoxically, the City, having initiated proceedings in federal court and appealed the 1986 remand, also now informs us, though it never so contended below,[2] that "[a]ny action taken by this Court will resolve absolutely nothing as far as NTI is concerned."

We find the City's legal arguments to be utterly devoid of merit. We affirm the district court's remand of the case to state court; we vacate the district court's decision not to impose sanctions on the City for improvident removal and remand to the district court for its reconsideration of whether such sanctions are appropriate under the correct legal standard; and, finally, we award attorneys' fees and costs on ap-

---

1. The City appeals only on the basis of its removal under section 1443, under which remand is subject to our review. The remand of a case removed under section 1441 is not reviewable, unless, as is not the case here, the district court "has affirmatively stated and relied upon a non–1447(c) ground for remand." *Royal v. State Farm Fire & Casualty Co.*, 685 F.2d 124, 126 (5th Cir.1982). *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case ... removed pursuant to section 1443 of this title shall be reviewable by appeal or other-

wise."); *see also Whitaker v. Carney*, 778 F.2d 216, 219 (5th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986); Annot., *Civil Actions Removable from State Court to Federal District Court Under 28 U.S.C. § 1443*, 28 A.L.R.Fed. 488, §§ 11–14, at 511–16 (1976).

2. Indeed, in July 1986, shortly before the remand order, the City urged the district court that NTI had waived its motion to remand, requested six months to conduct discovery, and demanded a jury trial on the merits of NTI's Open Records Act suit.

peal to NTI and against the City for the City's plainly frivolous appeal.

## I.

■ The merits of this appeal need not long detain us. We do not decide whether the information sought by NTI should be made available or whether NTI's request is now moot under Texas' Open Records Act. Those decisions will be made by the courts of the State of Texas.[3] Further, as *Thompson v. Brown*, 434 F.2d 1092 (5th Cir.1970), relied on by the City, clearly holds, the mootness of a case does not prevent our review of the propriety of a remand order (in cases removed under section 1443). If the case is moot (as indeed *Thompson* apparently was even when it was removed) and was properly removed and erroneously remanded, the federal district court's remand order is reversed and that court, which has been determined to be the only court having jurisdiction of the case, is then directed to dismiss it as moot. *Id.* at 1096. *A fortiori*, if the removal was improper and the federal district court's remand is affirmed, the question of the mootness of the suit is left for the state court, which has exclusive jurisdiction of the case and which may have different standards of mootness than do the federal courts. Here, as below-noted, we hold that the removal was improper and affirm the remand; hence, the mootness issue is to be resolved by the state court.

■ The City's appeal as to the remand raises what amounts to two claims: first, that the district court erred by remanding without requiring a full evidentiary hear-

ing, and, second, that removal was proper because release of the information requested would compel the City to violate the Voting Rights Act. However, because no evidentiary hearing is required if the section 1443 grounds purportedly justifying removal are patently invalid from the face of the removal petition, *see Smith v. Winter*, 717 F.2d 191, 199 (5th Cir.1983); *Varney v. Georgia*, 446 F.2d 1368 (5th Cir. 1971), and because we agree with the district court that removal was plainly improper, the City's contentions effectively collapse into the single assertion that removal was proper, which we now address.

### A. *Propriety of Removal*

The Garland City Charter provides that city managers are to be chosen by the City Council. The City's petition for removal asserted that requiring the disclosure of the applicants' names would violate a provision of the Voting Rights Act, 42 U.S.C. § 1973c, because publication of information about job applicants would open city manager selection to public debate, thereby transforming a selection process into an election process.[4]

Under 28 U.S.C. § 1443(2), removal is proper if an appropriate official is sued in state court for "refusing to do any act on the ground that it would be inconsistent with" any law providing for equal rights, such as section 1973c. *See Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968).[5] The City asserts that it has a federal right to refuse to comply with state law, because section 1973c prohibits certain changes affecting voting without court approval or the United States Attorney Gen-

---

3. Certainly that the city manager has been chosen does not necessarily render of no public interest who else had applied for that position.

4. The City points to NTI's original state court petition, which urged prompt action because the City Council might hire a new city manager before "the public will have an opportunity to consider the qualifications of the candidates or to engage in public debate regarding the same. The lack of the information which has been requested denies the public the opportunity *to attempt* to influence the choice that is to be made for a public official whose conduct will affect many members of the public." (Emphasis added.) The City's petition for removal mis-

represented NTI's petition by altering the second sentence quoted, substituting the words "the opportunity *to properly* influence the choice" (emphasis added).

5. *Whatley* was removed under section 1443(1). We do not reach the question of whether city officials are the kind of officials intended to be protected by section 1443(2) in the context of this case. *See Detroit Police Lieutenants and Sergeants Association v. City of Detroit*, 597 F.2d 566, 568 (6th Cir.1979). We assume, *arguendo*, the availability of section 1443(2) on all bases except that rejected in the text.

eral's preclearance, and that removal is therefore proper under section 1443(2). The City alleges that those informed citizens who would influence the City Council in its selection of a new city manager would reflect a different racial mix than do the electors of the council members, each of whom represents a defined geographical area, and that this citizen influence would bypass the existing representational system of the city charter and (presumably) in some way dilute minority voting power.[6]

Adopting the City's theory would stretch the Voting Rights Act beyond rational limits, if not distort its purpose, and seal off significant aspects of City government from citizen scrutiny. Article IV, section 1, of the Garland City Charter empowers the Garland City Council to "[a]ppoint the city manager." This same section of the charter also directs the City Council to establish administrative departments; "[a]dopt the budget of the city and disburse municipal funds"; authorize the issuance of bonds; "[i]nquire into the conduct of any office, department or agency of the city"; "[o]pen, widen, extend or straighten public streets"; "[p]rovide ... for the exercise of the police powers of the city"; "[a]dopt ... plans ... for the replanning, improvement and redevelopment of neighborhoods"; and "[p]ass all ordinances."

The City's claim is that the Voting Rights Act protects the City Council's absolute prerogative to make decisions entrusted to it by the city charter, and that enforcement of Texas' Open Records Act, by providing information to citizens, increases the possibility that citizens might influence Council decisions, thereby somehow changing the City's representational structure. If this theory proves anything at all, it proves far too much. The absurdity of the City's premise becomes self-evident when the theory is applied evenhandedly to all powers given the City Council by the charter, because the City's argument requires the parallel conclusion that voting rights are threatened by public awareness about and involvement in matters such as the creation of city departments, the city budget, issuance of bonds, official conduct in office, public thoroughfares, the exercise of police powers, neighborhood planning, the enactment of city laws, and the appointment of major city officials. We decline the City's invitation to explore this far "frontier of the law" and hold that the district court was clearly correct in finding that this is not the sort of change envisioned by the Voting Rights Act and addressed by section 1973c. *See, e.g., Smith v. Winter,* 717 F.2d 191 (5th Cir.1983) (discussing the "change" and "voting" requirements of section 1973c and removal under section 1443).[7]

Because this fundamental defect was plainly evident in the City's petition for removal, no evidentiary hearing was required, and remand was proper.

### B. Sanctions Under Rule 11 and Section 1447(c)

NTI by cross-appeal argues that the district court applied an incorrect legal standard in its decision not to sanction the City. At the outset, we observe that we retain jurisdiction to review sanction decisions even though removal was improper and even though the removal was sought in part under section 1441, as well as under section 1443. In that respect, this case presents a fact situation almost the converse of that of *In re Vatican Shrimp Co., Inc. v. Solis,* Nos. 86–2412, 86–2579, 86–2601 (5th Cir.1987), in which Vatican Shrimp appealed the district court's decision to

---

**6.** The district court characterized this theory as follows: "[T]he City has embraced the nonsensical notion that a newspaper, by seeking to obtain information about city government, can unilaterally alter the city charter. Because the major premise of the City's argument is clearly wrong, the balance of its argument is likewise without merit and is summarily rejected by the court." (Footnote omitted.)

**7.** We need not decide whether—as NTI also contends—the City's petition must fail because section 1973c reaches only changes arising from a state enactment. *Cf. Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 826–27, 22 L.Ed.2d 1 (1968).

award sanctions against the company based on the court's conclusion that Vatican Shrimp's removal of the case under section 1441 was unwarranted. There, we reversed an award of attorneys' fees, noting that although section 1447(d)

> "precludes our review of the order of remand, it does not shield the subsidiary issue of Rule 11 sanctions from appellate review. Absent review of Rule 11 sanctions in section 1447(c) removal cases, the district courts would have unlimited authority to impose a wide range of penalties. This is clearly not the intent of either the removal statute or Rule 11. Moreover, our review on the merits of the Rule 11 sanctions is distinct and separable from a review on the merits of the order of remand." *Id.*, n. 7.

The decision to impose—or not to impose—sanctions in a removal asserted on both sections 1441 and 1443 is likewise reviewable by this Court. Just as we could review the district court's decision to award attorneys' fees if they had been imposed on the City, we can review the denial of costs and fees, including the legal standard applied by the district court, in its decision that removal was improper under both sections 1441 and 1443.

The district court declined to impose sanctions for the City's removal of this case, noting that "[t]he court can characterize the City's arguments in support of removal in various pejorative terms, but 'bad faith' is not one of them." The district court apparently assumed that bad faith is a prerequisite to the award of attorneys' fees and costs.

The district court's Memorandum Opinion and Order does not make clear whether it addresses the award of attorneys' fees and costs only under 28 U.S.C. § 1447(c), only under Rule 11, Fed.R.Civ.P., or under both provisions. Rule 11 permits a district court—either on a party's motion or *sua sponte* [8]—to award costs and attorneys' fees against a party or attorney, or both, for filing a "pleading, motion, [or] other paper of a party" that is not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," *or* if it is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11 also imposes upon the attorney signing a party's pleadings, motions, and other papers the duty of reasonable inquiry and permits sanctions even in the absence of bad faith.[9]

■ Accordingly, because it appears that the district court may have applied an improper threshold standard to sanctions under Rule 11, we vacate the decision not to impose sanctions and remand to allow the district court to reconsider this decision. We also observe that section 1447(c) permits an award of "just costs" if the district court finds that "the case was removed improvidently and without jurisdiction" and that the language of section 1447(c) does not require bad faith as a precondition to an award of costs.[10]

---

8. The fact that NTI's request for sanctions referred only to 28 U.S.C. § 1447(c) does not preclude sanctions under Rule 11, which states, "If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* ... an appropriate sanction, which may include ... the amount of the reasonable expenses incurred because of the filing ... including a reasonable attorney's fee." (Emphasis added.) *See also* Notes of Advisory Committee on Rules, Rule 11, 1983 Amendment ("[T]he words 'shall impose' ... focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case....").

9. *See, e.g., Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987) ("[A]n attorney's good faith is no longer enough to protect him from rule 11 sanctions."); *Davis v. Veslan Enterprises*, 765 F.2d 494, 497 n. 4, 498 n. 5 (5th Cir.1985).

10. *See* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3739, at 586–87 (1985) (assessing just costs is appropriate "when the nonremovability of the action is obvious"); *see also Robertson v. Ball*, 534 F.2d 63, 66 n. 5 (5th Cir.1976) (per curiam) (discussing duty to "insure that the § 1443 exception to § 1447(d) not be used as a dilatory tactic by recalcitrant state court defendants"); *Texas v. Gulf Water Benefaction Co.*, 679 F.2d 85 (5th Cir.1982) (discussing and quoting *Robert-*

*C. Appellate Sanctions Under Rule 38*

NTI also seeks sanctions against the City for bringing a frivolous appeal. "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Fed.R.App.P. 38. "A frivolous appeal is one which 'involves legal points not arguable on their merits.'" *Olympia Co., Inc. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir.1985) (citation omitted); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 221–23 (5th Cir.1984) (imposing frivolous appeal sanctions on both the litigant and counsel), *cert. denied*, —— U.S. ——, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985); 28 U.S.C. § 1912 (authorizing award of damages and double costs to party prevailing on appeal if a decision of a lower court is affirmed), *cited and quoted in Olympia, supra*, at 893 n. 3; 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure: Jurisdiction* § 3984, at 463–66 (1977); *id.* at 369–81 (Supp.1986).

■ We find that Rule 38 sanctions are appropriate in this appeal and direct appellant to pay appellee's costs on appeal as well as appellee's reasonable appellate attorneys' fees in an amount determined by the district court following our remand of this case. *See, e.g., Stelly v. Commissioner*, 804 F.2d 868, 870–72 (5th Cir.1986) (noting court of appeals may remand for a determination of the amount of attorneys' fees or itself fix the amount thereof based on information filed with the appellate court).

## II.

We hold that the district court correctly determined that this case was not remova-

son ); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 254 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982) (holding removal was improper, remanding, and directing the district court to consider imposing sanctions pursuant to section 1447(c)).

We note that the section 1441 removal was asserted on the theory that disclosure of the names of the applicants for the position of city manager would violate those individuals' rights to privacy under the United States Constitution. There appear to be at least two difficulties here. First, the federal constitutional assertion would appear to be a matter of defense barred as a ground for removal under the "well-pleaded

ble under section 1443, and accordingly its remand is affirmed. We vacate the district court's decision not to impose sanctions on appellant, and remand to the district court both for reconsideration of sanctions respecting the removal proceedings below applying the standards of Rule 11 and section 1447(c), and to determine the amount of reasonable attorneys' fees incurred by NTI on appeal.

AFFIRMED in part; VACATED in part and REMANDED.

complaint" rule. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Second, it is questionable that an applicant for an important public position such as city manager has even a colorable claim that the United States Constitution protects his identity from disclosure, particularly where disclosure is required by state statute. *Cf. Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971) (candidate for public office is public figure or public official within rule of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).