

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-1997

# Davis v. Glanton

Precedential or Non-Precedential:

Docket 96-1299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Davis v. Glanton" (1997). *1997 Decisions*. Paper 52.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/52

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-1299

KENNETH E. DAVIS; JAMES S. ETTELSON;
ALAN C. KESSLER; FRANK LUTZ;
JOSEPH M. MANKO; ORA R. PIERCE;
JAMES J. PRENDERGAST; BRIAN D. ROSENTHAL;
DAVID A. SONENSHEIN; HOWARD L. WEST;
GLORIA P. WOLEK; PHYLLIS L. ZEMBLE

v.

RICHARD GLANTON, Individually and as a Trustee of
The Barnes Foundation; NIARA SUDARKASA,
Individually and as a Trustee of The Barnes Foundation;
SHIRLEY A. JACKSON, Individually and as a Trustee of
The Barnes Foundation; CHARLES FRANK, Individually and as a
Trustee of the Barnes Foundation

Richard Glanton, Niara Sudarkasa
and Shirley A. Jackson, Appellants

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 96-cv-01800)

_____

Argued: January 30, 1997
Before: BECKER, ROTH, Circuit Judges, and
BARRY, District Judge.[*]

(Filed  March 3, 1997)

ROBERT J. SUGARMAN, ESQUIRE (ARGUED)
Sugarman & Associates
7th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103

Attorneys for Appellants
Richard Glanton and Niara Sudarkas
HARDY WILLIAMS, ESQUIRE
3801 Market Street, Suite 204

_____

[*] Honorable Maryanne Trump Barry, United States District
Judge for the District of New Jersey, sitting by designation.

Philadelphia, PA 19104

Attorney for Appellant Shirley Jackson

PAUL R. ROSEN, ESQUIRE (ARGUED)
LARRY R. WOOD, JR., ESQUIRE
Spector, Gadon & Rosen, P.C.
1700 Market Street – 29th Floor
Philadelphia, PA 19103

Attorneys for Appellees: Kenneth E. Davis,
James S. Ettelson, Alan C. Kessler,
Frank Lutz, Joseph M. Manko, Ora B. Pierce,
James J. Prendergast, Brian D. Rosenthal,
David A. Sonenshein, Howard L. West,
Gloria P. Wolek, Phyllis L. Zemble

_____

OPINION OF THE COURT
_____

BECKER, Circuit Judge.

This is an appeal by certain trustees of the Barnes Foundation, who are also African-American citizens. It requires us to determine whether a state court defamation action filed against them by certain commissioners of Lower Merion Township, alleging that the Trustees had falsely accused the Commissioners of racist official conduct, is removable to federal district court pursuant to the civil rights removal statute, 28 U.S.C. § 1443(1), on the ground that the defamation action represents an attempt to retaliate against the Trustees for exercising their federally protected right to assert, in a federal lawsuit, that they were discriminated against by the Commissioners on racial grounds. Although the Trustees present an emotionally appealing argument for removal, we conclude that they have failed to satisfy the narrow and well-defined requirements for § 1443(1)

2

removal as explicated in State of Georgia v. Rachel, 384 U.S. 780 (1966), and City of Greenwood v. Peacock, 384 U.S. 808 (1966). We will therefore affirm the order of the district court remanding the removed action to the state court from whence it came.

I.    Facts & Procedural History

The Barnes Foundation is a non-profit Pennsylvania corporation located on Latches Lane, Lower Merion Township, Montgomery County, Pennsylvania.  Its history is well known, and for present purposes we need recount only that the late Dr. Albert C. Barnes created the Barnes Foundation, by Indenture and Agreement dated December 6, 1922, and that the Indenture provides that, following the expiration of the terms of the Foundation's Trustees in place at Barnes' death, four of the five Foundation Trustees are to be nominated by Lincoln University, a historically African-American institution, with a fifth trustee to be named by Girard Bank (now Mellon Bank).  By 1990, with the death or resignation of a number of former trustees, the Foundation's Board of Trustees became predominantly African-American.  At the time of the acts complained of, Richard Glanton, Niara Sudarkasa, Shirley Jackson, and Charles Frank (defendants in the state defamation action) were trustees, and all except for Mr. Frank are African-American and appellants here.[1]

_____

[1]The Commissioners filed a voluntary notice of dismissal without prejudice of Trustee Frank on June 13, 1996.

3

For present purposes, the material elements of this Lower Merion Township–Barnes Foundation dispute began on January 18, 1996, when the Foundation filed an action under 42 U.S.C. § 1983 and § 1985(3), claiming that the Township, the members of the Township Board of Commissioners, and certain of the Foundation's Latches Lane neighbors had conspired to harass, intimidate, interfere with, and discriminate against the Foundation.[2] The federal civil rights complaint alleges that the Township and the Commissioners, in concert with the neighbors, imposed parking, police, fire, and zoning requirements and regulations in such a way as to injure the Foundation and interfere with its use of its property, and that they enforced these requirements and regulations against the Foundation more aggressively than they did against other similarly situated institutions.

The gravamen of the Foundation's federal civil rights action is that this adverse treatment was motivated by racial prejudice engendered by the fact that (1) the majority of the Foundation's Trustees are African-American; (2) Glanton, the President of the Board, is African-American; and (3) the Foundation is controlled by a historically African-American university. The complaint alleges that the Township and the Commissioners violated the

---

[2]The district court, by order dated June 3, 1996, dismissed the complaint as to the neighbors on the grounds that, even assuming that they had participated in a conspiracy to violate the Foundation's constitutional rights and were motivated by invidious racial animus, they enjoyed total immunity under the Noerr–Pennington doctrine. See Barnes Foundation v. Township of Lower Merion, No. 96-0372. The Trustees do not appeal this order.

4

Foundation's constitutional rights, and that they should be enjoined from continuing such violations.

On March 4, 1996, the Commissioners filed a state court defamation action in the Court of Common Pleas of Montgomery County against Glanton and the other members of the Foundation's Board. The state court defamation action is based upon two sets of allegedly defamatory statements: (1) certain statements attributed to Glanton in a <u>Philadelphia Inquirer</u> article dated November 27, 1995, that the Commissioners had engaged in "thinly disguised racism," and that "[t]here is no way that you cannot see racism in the way [the Commissioners] are treating the Foundation"; and (2) statements made in the Barnes Foundation's complaint in the federal civil rights action.

On March 7, 1996, the Trustees filed a Joint Notice of Removal, claiming that federal removal jurisdiction existed pursuant to 28 U.S.C. §§ 1441, 1443(1), and 1651.[3] The Trustees contend that the defamation suit represents an attempt by the Commissioners to retaliate against the Trustees for exercising their federally protected rights. Indeed, the Trustees assert that the very filing of the defamation action violates their civil rights, and, at all events, that the Foundation and the Trustees will be denied their right to be free from

_____

[3]On March 7, 1996, the Foundation also amended its complaint in the federal civil rights action to allege that the filing of the defamation action and the imposition on the Trustees of the obligation to defend it were taken to further the alleged conspiracy to harass the Foundation in violation of § 1983 and § 1985(3). The amended complaint also asserts that the institution of the suit violates the Foundation's First Amendment rights.

5

unconstitutional race discrimination if the Commissioners are permitted to proceed in state court.

The Commissioners quickly filed a motion to remand, contesting all three grounds for removal. The district court granted the Commissioners' motion, determining that removal was improper on all of the grounds asserted by the Trustees. Addressing the requirements of § 1443(1), the district court held that the Trustees have never demonstrated that they would be unable "to protect their rights" in state court as required by Georgia v. Rachel, 384 U.S. 780 (1966), and City of Greenwood v. Peacock, 384 U.S. 808 (1966). The district court also held that removal pursuant to § 1441 was improper because the Trustees had failed to show that federal law was an essential element of the Commissioners' state court defamation action. In so holding, the court ruled that the state action "cannot be viewed as a retaliatory measure for bringing the federal claim, but is an independent defamation action in its own right."

Finally, the district court found that the state court defamation action was not removable under § 1651, better known as the All Writs Act, because the Trustees did not meet "their threshold burden of demonstrating the 'extraordinary circumstances' that would justify removal under the Act." On April 3, the Trustees filed a Notice of Appeal from the District Court's order.


II. Appellate Jurisdiction

Our power to review a remand order is defined by 28 U.S.C. § 1447(d), which provides:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

Section 1447(d) thus expressly authorizes appellate review of remand orders in cases that were originally removed to federal court under § 1443. However, it follows from the clear text of § 1447(d) that, insofar as the Trustees' appeal challenges the district court's rulings under 28 U.S.C. § 1441, we must dismiss the appeal for want of appellate jurisdiction. We so held in Gittman v. Gittman, 451 F.2d 155, 156 (3d Cir. 1971) (recognizing the non-appealability of decisions on removal, even when a removal decision pursuant to § 1443 is appealable in the same case). We will accordingly dismiss the appeal insofar as it is predicated on § 1441.[4]

---

[4]The Trustees also invoke our mandamus jurisdiction under the All Writs Act, 28 U.S.C. § 1651. A district court, in exceptional circumstances, may use its authority under the Act to remove an otherwise unremovable state court action to "prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. New York Tel. Co., 434 U.S. 159, 172 (1977). Here, however, the Trustees have not demonstrated how removal will support jurisdiction that is already in existence. Nor have they identified the "extraordinary circumstances" necessary to justify removal under the Act. See In re Agent Orange Product Liability Litig., 996 F.2d 1425, 1431 (2d Cir. 1993) (The Act is not a "jurisdictional blank check which [federal courts] may use whenever they deem it advisable."). Accordingly neither will we exercise jurisdiction under § 1651.

## III. Removal Under 28 U.S.C. § 1443
### A. Introduction: <u>State of Georgia v. Rachel</u> and <u>City of Greenwood v. Peacock</u>

The Civil Rights Removal Statute, 28 U.S.C. § 1443,

authorizes the removal of a state law action:

> [a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.

While the language of this section is opaque, the jurisprudence has made clear that Congress has crafted only a narrow exception to the rule that a state court action may be removed to a federal district court only if federal jurisdiction is evident on the face of the plaintiff's well-pleaded complaint (which, of course, it is not in this state defamation action).

In <u>State of Georgia v. Rachel</u>, 384 U.S. 780 (1966), the Supreme Court articulated the precise circumstances required to sustain removal under § 1443(1), clarifying that removal requires satisfaction of a two-pronged test: a state court defendant must demonstrate both (1) that he is being deprived of rights guaranteed by a federal law "providing for ... equal civil rights"; and (2) that he is "'denied or cannot enforce' that right in the courts" of the state. <u>Id</u>. at 788. In <u>Rachel</u>, twenty African-American individuals were prosecuted in state court for criminal trespass violations as a result of their attempts to obtain service at a privately owned restaurant in Atlanta, Georgia. In contrast, federal law required such a restaurant to serve persons of all races, thus immunizing the

8

conduct for which they were being prosecuted.  The arrested individuals sought to remove the state court prosecutions to federal court on the basis of 28 U.S.C. § 1443(1).  In construing the first requirement, the Court determined that "the phrase 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality."  Id. at 792.  The Court concluded that the statute invoked by the removing defendants, the Civil Rights Act of 1964, was a statute providing for equal civil rights.

The Court then addressed the second statutory requirement -- that the state court defendant be "denied or cannot enforce" his or her rights in state court.  The Court noted that, in order for pre-trial removal to be sustained, denial of rights traditionally had been required to be so manifest in a formal expression of state law that "it could be taken as suitable indication that all courts in that State would disregard the federal right of equality with which the state enactment was precisely in conflict." Id. at 804 (citing Strauder v. West Virginia, 100 U.S. 303 (1880), and Commonwealth of Virginia v. Rives, 100 U.S. 313 (1880)).  The Court explained that, given the particular circumstances of that case, a firm prediction that a defendant would be denied federal rights in the state court might be made even in the absence of a discriminatory state enactment.

In creating a narrow exception to the traditional "denied or cannot enforce" interpretation, the Rachel Court recognized that § 203 of the Civil Rights Act of 1964 specifically prohibited any "punishment or attempts to punish" any person for exercising

9

rights secured by other sections of the Act.  <u>Id.</u> In fact, the

Court noted that in <u>Hamm v. City of Rock Hill</u>, 379 U.S. 306, 311

(1964), it had interpreted § 203 of the Civil Rights Act of 1964

to prohibit "on its face ... prosecution of any person for

seeking service in a covered establishment, because of his race

or color."  <u>Rachel</u>, 384 U.S. at 785.  Based on the prohibition

against prosecution contained in § 203, the Court concluded that

"nonforcible attempts to gain admittance to or remain in

establishments covered by the Act, are immunized from

prosecution."  <u>Id.</u>  Accordingly, the Court opined that "<u>in the

narrow circumstances of this case</u>, <u>any proceedings in the courts

of the States</u> will constitute a denial of the rights conferred by

the Civil Rights Act of 1964 as construed in <u>Hamm</u>."  <u>Id.</u> at 804

(emphasis added).

In <u>City of Greenwood v. Peacock</u>, 384 U.S. 808 (1966),

decided on the same day as <u>Rachel</u>, the Court highlighted the

limited nature of the <u>Rachel</u> exception.  In <u>Peacock</u>, twenty-nine

people were prosecuted as a result of First Amendment petitioning

activity.  The Mississippi state court defendants sought removal

under § 1443(1).  The <u>Peacock</u> Court began its analysis of §

1443(1) removability by noting the unique circumstances present

in <u>Rachel</u>:
the basic difference between this case and <u>Rachel</u> is thus
     immediately apparent.  In <u>Rachel</u>, the defendants relied
     on the specific provisions of a pre-emptive federal
     civil rights law -- §§ 201(a) and 203(c) of the Civil
     Rights Act of 1964 ... as construed in <u>Hamm v. City of
     Rock Hill</u>, <u>supra</u> -- that  ... specifically and uniquely
     conferred upon the defendants an absolute right to
     "violate" the explicit terms of the state criminal
     trespass law with ... impunity.

10

<u>Id.</u> at 826.  Accordingly, the Court explained that two significant differences existed between <u>Peacock</u> and <u>Rachel</u>. First, "no federal law confers an absolute right on private citizens ... to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman"; and, second, "no federal law confers immunity from state prosecution on such charges."  <u>Id.</u> at 826–27.

<u>Peacock</u> should not be read to narrow the holding of <u>Rachel</u>.  Instead, the Court merely reiterated the limited and unique circumstances under which removability could be sustained regardless of the presence of a facially discriminatory state statute.  Thus, <u>Peacock</u> reaffirms that in the vast majority of cases:

> [i]t is <u>not</u> enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court.  The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights.  The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial.  Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

<u>Id.</u> at 827–28.  As a result, the Court in <u>Peacock</u> refused to expand <u>Rachel</u>'s interpretation of § 1443(1), holding that its

earlier "decisions were correct in their basic conclusion that the provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal courts in the administration of the . . . law." Id. at 831.

B.      The First Prong of Georgia v. Rachel

The Trustees assert that their case satisfies both requirements for § 1443(1) removability as set forth in Rachel and interpreted in Peacock.  While they invoke 42 U.S.C. § 1985(3) with respect to both prongs, in terms of the first prong, they contend that the filing of the state court defamation action was an act in furtherance of a racially motivated conspiracy to deny them their equal civil rights.[5]  The Trustees point out that § 1985(3) was designed to redress injuries that

---

[5]42 U.S.C. § 1985(3) provides:

> If two or more persons in any State or Territory conspire
> ... for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal
> protection of the laws, or the equal privileges and
> immunities under the laws; or for the purpose of preventing
> or hindering the constituted authorities of any State or
> Territory from giving or securing to all persons within such
> State or Territory the equal protection of the laws; or if
> two or more persons conspire to prevent by force,
> intimidation, or threat, any Citizen who is lawfully
> entitled to vote, ...; in any case of conspiracy set forth
> in this section, if one or more persons engaged therein do,
> or cause to be done, any act in furtherance of the object of
> such conspiracy, whereby another is injured in his person or
> property, ... the party so injured or deprived may have an
> action for the recovery of damages, occasioned by such
> injury or deprivation, against any one or more of the
> conspirators.

12

result from a conspiracy motivated by race-based animus, and submit, therefore, that they have invoked the protection of an "equal civil rights" statute as required by the Court in Rachel.

Intuitively, § 1985 would seem to constitute an "equal civil rights" statute. It surely provides a cause of action for one who has been the victim of conspiratorial racial discrimination, and hence denied the "equal protection of the laws." Furthermore, its origins rest in the Klu Klux Klan Act of 1871, an Act passed exclusively to redress civil rights violations motivated by racial prejudice. See Griffin v. Breckenridge, 403 U.S. 88, 98 (1971) (Ku Klux Klan Act of 1871 "is the parent of § 1985(3)").

It is not clear, however, that § 1985(3) satisfies the technical nature of the Court's jurisprudence in this area. In fact, Rachel and Peacock suggest that a state court defendant must invoke a statute that expressly provides for equal rights stated specifically in terms of racial equality. Peacock, 384 U.S. at 828. The one circuit to have considered § 1985(3) in the context of § 1443(1) removal affirmed the remand order of the district court, and stated, without exposition, that the district court had "properly followed Rachel." Doe v. Berry, 967 F.2d 1255, 1256 (8th Cir. 1992). In contrast, courts that have granted removal under § 1443(1) addressed claims brought under civil rights statutes that specifically protected civil rights based on racial equality. See Conrad v. Robinson, 871 F.2d 612, 615 (6th Cir. 1989) (holding that the first prong was satisfied

13

where defendant claimed protection, under 42 U.S.C. § 2000e-3, from retaliation for engaging in activity protected by 42 U.S.C. § 2000e-2(c), which forbids limiting union membership on account of "race, color, religion, sex, or national origin"); Sofarelli v. Pinellas County, 931 F.2d 718, 721 (11th Cir. 1991) (first prong satisfied where defendant asserted protection under the Fair Housing Act, which prohibits discrimination in housing "on the basis of race").

Even if § 1985(3) is deemed to protect specifically against race-based discrimination as the Rachel Court required, the Commissioners contend that the Trustees' claim must falter on an altogether different ground. They submit that, in actuality, the Trustees are using the vehicle of a § 1985 claim to protect their First Amendment rights. That is not an implausible contention, and, were it to be the case, the Trustees' removal action would be improper, for the Supreme Court has held that "the First Amendment rights of free expression ... are not rights arising under a law providing for 'equal civil rights' within the meaning of § 1443(1)." Peacock, 384 U.S. at 825. However, more than asserting that the filing of the state defamation action violates their First Amendment rights, the Trustees contend that the Commissioners filed the defamation action in direct retaliation for the filing of a federal civil rights action alleging racial discrimination in violation of federal law.

The status of § 1985(3) as an "equal civil rights" statute is thus unclear, with strong arguments on both sides in terms of the jurisprudence. Fortunately, however, we need not reach this

14

close and difficult issue because we conclude, for reasons described herein, that the Trustees have failed to satisfy the second Rachel prong.


C.    The Second Prong of Georgia v. Rachel

In order to sustain removability under § 1443(1), a defendant must also demonstrate that he is "denied or cannot enforce" his specified federal rights in the state courts. Rachel, 384 U.S. at 788.  Although traditionally the denial had to be manifest in a "formal expression of state law," a defendant can now sustain pre-trial removal where a federal civil rights statute "[o]n its face . . . prohibits prosecution of any person" seeking to exercise that civil right.  Id. at 804 (citing Hamm, 379 U.S. at 311).  Thus, removal is available where the state court defendant's federal civil rights would "inevitably be denied by the very act" of being brought to trial in state court. Peacock, 384 U.S. at 828.  In creating such a narrow range of cases that are susceptible to removal, the Supreme Court sought to ensure that "removal would be available only in cases where the predicted denial [of equal civil rights] appeared with relative clarity prior to trial." Rachel, 384 U.S. at 803.  For if the denial was less clear, the federal courts would become "involved in the unseemly process of prejudging their brethren of the state courts."  Id.

The Trustees assert that the mere pendency of the state court defamation action violates their federal civil rights as prescribed in § 1985(3).  They emphasize that the Commissioners

15

filed their defamation action soon after the Trustees filed the federal civil rights action, and as such the state action can be viewed only as a means to intimidate and retaliate against the Trustees for pursuing their federal action. They contend that § 1985(3), like the sections of the Civil Rights Act of 1964 at issue in Rachel, prohibits actions to intimidate or punish persons for exercising civil rights protected by § 1985(3). Furthermore, they argue that attempts to punish, even if unsuccessful, deny and violate the very rights provided by that provision.

A careful reading of § 1985(3) makes clear, however, that the provision grants no such protection. It does not confer an absolute right on private citizens to defame others. Nor does it confer immunity from state civil actions brought to seek redress for those statements. Furthermore, the Trustees do not attempt to demonstrate, and apparently cannot demonstrate, that a state law exists that would on its face deny them the ability to enforce their equal rights in state court.

The Trustees nonetheless claim that, just as Hamm v. City of Rock Hill immunized state court defendants from prosecution for trespass, Griffin v. Breckenridge, 403 U.S. 88 (1971), held that § 1985(3) immunizes the Trustees from a defamation action. They submit that the Court in Griffin explained that § 1985(3) "protects against 'intimidation,' which must include threats of civil and criminal prosecution against African-Americans exercising First Amendment rights," and, therefore, that § 1985(3) protects the Trustees from a defamation action. But

16

Griffin cannot be read to extend protection to the Trustees for several reasons. First, the Court in Hamm relied on language that expressly protected against prosecution, in that § 203 of the Civil Rights Act provided that "[n]o person shall ... punish or attempt to punish any person" for exercising any right protected under the Act. Hamm, 379 U.S. at 311. No such language exists in § 1985(3). In fact, the only place in this statute which specifically refers to "intimidation" is related to the right to vote. Thus, a perusal of § 1985(3) makes clear that it does not provide the Trustees with a right to engage in tortious, defamatory conduct. Second, the Trustees misread Griffin, for nowhere in it does the Court intimate that § 1985(3) prohibits the prosecution of a state court defamation action.

In sum, it is clear that nothing in § 1985(3) or in Griffin immunizes the Trustees from civil state court defamation actions, and that they fail to fit within the limited exception set forth in Rachel. In fact, the circumstances of the Trustees' case are closer in appearance to Peacock than to Rachel. The distinction between these two types of cases is clear:

> The line between Rachel and Peacock is that between "prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the petitioner, and prosecutions where the only grounds for removal is that the charge is false and motivated by a desire to discourage the petitioner from exercising or to penalize him for having exercised a federal right."

Johnson v. Mississippi, 421 U.S. 213, 234 (1975) (Marshall, J., dissenting) (citing New York v. Davis, 411 F.2d 750 (2d Cir. 1969)). Even if the Trustees are correct in their assertions

17

concerning the Commissioners' retaliatory motivation, their case clearly falls into the latter category, and as such, outside the narrow exception identified in Rachel. Moreover, removal is not warranted by the concern, simpliciter, that a denial of equal rights may take place and go uncorrected at trial. Rachel, 384 U.S. at 800. An analysis of that sort would require this Court to second-guess the impartiality of our state court brethren, and this outcome is exactly what the court in Rachel and Peacock counseled against.

None of the cases on which the Trustees rely persuades us to hold otherwise. See Sofarelli, 931 F.2d 718; Whatley v. City of Vidalia, 399 F.2d 521 (5th Cir. 1968); Rogers v. Rucker, 835 F.Supp. 1410 (N.D. Ga. 1993); Northside Realty Assoc., Inc. v. Chapman, 411 F. Supp. 1195 (N.D. Ga 1976). Whatley is not apposite because the removing defendants in that case specifically invoked the provisions of the Voting Rights Act of 1965, which provides that "[n]o person shall intimidate, threaten or coerce ... any person for urging or aiding any person to vote or attempt to vote." Id. at 522 n.2 (citing 42 U.S.C. § 1973i(b)). Thus, because Congress had specifically immunized the action in question, the state court defendants could not be prosecuted for encouraging individuals to vote.

The cases of Sofarelli, Rogers, and Northside Realty are similarly unhelpful. In those cases, the removing state court defendants invoked a provision of the Fair Housing Act of 1968 which provides that no person shall "coerce, intimidate, threaten, or interfere with any other person ... on account of

18

his having aided or encouraged any other person in the exercise or enjoyment of any right granted" by the Fair Housing Act. Northside Realty, 411 F. Supp. at 1198 (citing 42 U.S.C. § 3617). Thus, no person who had encouraged another to take advantage of the Fair Housing Act could be prosecuted, and the filing of the suit itself violated the removing defendants' civil rights. As previously discussed, the Trustees cannot avail themselves of such a provision, for § 1985(3) does not immunize them from a civil defamation suit.

In addition, the Trustees cannot derive support from Conrad v. Robinson, 871 F.2d 612 (6th Cir. 1989). In that case, the removing defendant Robinson filed a Title VII action against Conrad, and a newspaper article was subsequently published that discussed the pending case. Conrad, based on the statements in the newspaper article and in Robinson's complaint, brought a libel action against him. In upholding § 1443(1) removal, the Sixth Circuit noted that the "only statements made by Robinson" which Conrad claimed were libelous "related to Robinson's [pre-existing] federal court suit." As a result, the Sixth Circuit opined that the "connection between Robinson's speech and this protected activity [the filing of the suit] is very close. ... Had Robinson's comments in the Plain Dealer been unrelated to his pre-existing federal court case against [the union], but were just general allegations that Conrad discriminated on the basis of race, the result might be very different." Id. at 616.

We need not pass on whether we will follow Conrad because the question addressed by the Sixth Circuit is not the same as

19

the one we now face.  In Conrad, the removing defendant alleged that the state court prosecution was not permitted because Title VII prohibited any form of retaliation against an employee for having filed charges of discrimination in employment.  Id. at 615 (citing 42 U.S.C. § 2000e-3).  Title VII contains an explicit proscription against discrimination against any employee because "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The Conrad court determined that the filing of the defamation suit was in retaliation for the filing of an action under Title VII.  In the present case, the Trustees have not cited to a specific federal law that prohibits retaliation against, or provides immunity for, their allegedly defamatory conduct.

We are not insensitive to the point so effectively made by the Trustees' able counsel that the events that form the basis of the state court defamation action stem from the same set of facts as those underlying the federal civil rights action, and that, since allegations of racial bias suffuse the litigation, which is anchored in federal court, the defamation action too must be heard there in order to assure that civil rights are not compromised.  But this view ignores the rigors of federalism, and the technical precepts of governing by dint of which the principles of federalism are translated into reality.

IV.    Conclusion

20

The second prong of <u>Georgia v. Rachel</u> has not been met, just as the district court concluded; therefore, the order of the district court remanding this case to the Court of Common Pleas of Montgomery County (PA) will be affirmed.

_____