EMIGRANT SAVINGS BANK,
Plaintiff-Appellee,

v.

ELAN MANAGEMENT CORP., et al., Defendants.

Elan Management Corp.,
Defendant-Appellant.

No. 327, Docket 81–7449.

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1981.

Decided Jan. 12, 1982.

Judson A. Parsons, Jr., New York City (Dewey, Ballantine, Bushby, Palmer & Wood, J. Patrick Deely, New York City, of counsel), for plaintiff-appellee.

Marcia Berger Hershkowitz, Mineola, N. Y. (Goldweber & Hershkowitz, Mineola, N. Y., Elyse S. Goldweber, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, and FRIENDLY and PIERCE,* Circuit Judges.

FRIENDLY, Circuit Judge:

By a petition filed in the District Court for the Eastern District of New York, Elan Management Corp. (Elan) sought to remove, under 28 U.S.C. § 1443(1),[1] an action brought by Emigrant Savings Bank (Emigrant) in the Supreme Court of New York for Queens County to foreclose a mortgage on an apartment building owned and managed by Elan. The petition alleged that tenants in 36 of the 45 apartments are members of racial minority groups; that the building is located in a predominantly non-white area; and that the foreclosure action was brought in retaliation for Elan's having exercised rights under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq., and the Thirteenth Amendment. Elan went on to elaborate its claims as follows: About February 1979, Elan became interested in purchasing the apartment building. Prudential Savings Bank (Prudential), later merged with Emigrant, held the largest of three mortgages encumbering the building, which required extensive repair and rehabilitation and was the subject of numerous Building Code violations. Prudential agreed that if Elan purchased the building and completed the necessary repairs and rehabilitation, Prudential would issue a new mortgage to reflect the building's improved condition and would waive the collection of monthly interest payments until July 1979. In reliance upon this Elan purchased the building and expended some $100,000 on repairs, corrected all the violations, and satisfied the second and third mortgages. Elan began negotiations to reconstruct the mortgage with Emigrant in July 1979. The negotiations dragged. Elan claims it "was advised by an EMIGRANT representative that the reason EMIGRANT would not issue a new mortgage was because the majority of the building's tenants were non-white." Elan filed complaints with the New York State Banking Department and the Federal Deposit Insurance Corporation and advised Emigrant, by letter dated April 25, 1980, that it

---

* When this appeal was heard, Judge Pierce was a District Judge for the Southern District of New York, sitting by designation. He was inducted as a judge of this court on November 30, 1981.

1. This provides:
    Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
    (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
    . . .

---

had done so. Emigrant notified Elan, which had not resumed interest payments after July 1, 1979, that it was in default, and filed a *lis pendens* in the foreclosure action on April 30, 1980. A receiver of rents and profits was appointed on May 8, 1980. Elan responded by filing a civil action in the District Court for the Eastern District of New York, entitled *Elan Management Corp., et al. v. Emigrant Savings Bank, et al.*, CV–80–1381 (CPS), complaining of violations of the Fair Housing Act, the Equal Credit Opportunity Act, and the Thirteenth Amendment and by petitioning for removal of the foreclosure action.

Emigrant moved for a remand, arguing primarily that Elan had failed to demonstrate, as required by 28 U.S.C. § 1443(1), that the state court cannot fairly deal with the questions raised in Elan's defense. Elan, joined in the district court by the United States as *amicus curiae*,[2] argued that Emigrant's refusal to live up to the promises made by Prudential because of the race of the tenants and the racial composition of the neighborhood violated the provisions of the Fair Housing Act, 42 U.S.C. § 3605, which prohibits a bank from "deny[ing] a loan or other financial assistance to a person applying therefor . . . or discriminat[ing] against him in the fixing of the amount, interest rate, duration, or other terms or conditions of such loan or other financial assistance, because of the race . . . of such person . . . or of the . . . tenants", and that Emigrant's commencement of the foreclosure action was a retaliatory measure violating 42 U.S.C. § 3617, which provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, . . . or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [these sections]."[3]

The district court granted the motion to remand without conducting a hearing and this appeal followed, 28 U.S.C. § 1447(d). We affirm. While this is essentially on the grounds stated in Judge Sifton's well reasoned opinion, we have thought it worthwhile to write since most if not all the appeals in the Supreme Court and in this circuit since § 1447(d) was amended in 1964, 78 Stat. 266, to allow appeals from remands where removal was sought under § 1443, have dealt with criminal prosecutions.

We begin by agreeing with Judge Sifton and Elan that §§ 3604, 3605 and 3617 of Title 42 are laws "providing for the equal civil rights of citizens" within the meaning of 28 U.S.C. § 1443(1). We implied as much in *New York v. Davis*, 411 F.2d 750, 753 (2 Cir.), *cert. denied*, 396 U.S. 856, 90 S.Ct. 119, 24 L.Ed.2d 105 (1969), and Emigrant now does not seriously dispute this.

Decision whether Elan showed that it "is denied or cannot enforce" these rights in the courts of New York requires application of the distinction first made in *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880), and *Virginia v. Rives*, 100 U.S. 313, 25 L.Ed. 667 (1880), developed in a line of decisions ending with *Kentucky v. Powers*, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906), and reviewed in *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and *City of Greenwood v. Peacock*, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). See also *Johnson v. Mississippi*, 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975). The *Strauder-Rives* line of distinction was that removal would lie when enforcement of the petitioner's rights in a state court was barred by a state statute or constitutional provision which was applicable in terms although unconstitutional on its face, but not when the allegation was

**2.** The United States did not seek leave to file an *amicus* brief in this court.

**3.** Elan's claim under the Equal Credit Opportunity Act does not require separate consideration. The substantive provisions of that act do not go further than those of the Fair Housing Act in any respect relevant to this case, and the Equal Credit Opportunity Act contains no provision which would require the separate analysis that is necessary with respect to Elan's claim under 42 U.S.C. § 3617.

simply that in practice he would be denied or be unable to enforce his rights. As said in *Virginia v. Rives, supra,* 100 U.S. at 319–20, "in the absence of constitutional or legislative impediments he [the person seeking removal] . . . has only an apprehension that such rights will be withheld from him when his case shall come to trial, [and thus] cannot affirm that they are actually denied, or that he cannot enforce them."

The *Rachel* and *Greenwood* decisions left this distinction unimpaired. Justice Stewart, the author of both opinions, said in *Rachel,* 384 U.S. at 800, 86 S.Ct. at 1794:

Removal is warranted only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts.

The reason for allowing removal in *Rachel* was that "In the narrow circumstances of this case, *any* proceedings in the courts of the State will constitute a denial of the rights conferred by the Civil Rights Act of 1964, as construed in *Hamm v. City of Rock Hill,* [379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964),] if the allegations of the removal petition are true." 384 U.S. at 804, 86 S.Ct. at 1796 (emphasis in original). Section 201(a) of the Civil Rights Act created a federal statutory right to service in a place of public accommodation free from any discrimination because of race or color. Beyond this, the Court in *Hamm* read the provision of § 203(c) that no person shall "punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202" as prohibiting any state prosecution for asserting such a right. 379 U.S. at 311, 85 S.Ct. at 389. Hence the very attempt by Georgia to invoke its criminal trespass statute, see 384 U.S. at 783 n.1, 86 S.Ct. at 1785 n.1, against persons exercising their right specifically created by the 1964 Civil Rights Act not to leave a restaurant, if the request that they leave was based solely on racial reasons, would constitute a denial of a federally protected right "without any detailed analysis of the likely behavior of any particular state court." 384 U.S. at 805, 86 S.Ct. at 1797.

The narrowness of the extension of *Strauder* made in *Rachel* was immediately demonstrated in *Peacock.* In that decision the Court refused to allow removal of criminal prosecutions on charges for obstructing public streets, disturbing the peace and other offenses, which petitioners claimed to have been brought in violation of a federal statute providing that "[n]o person . . . shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose," 42 U.S.C. § 1971(b). Justice Stewart summarized *Rachel* as resting on two rights of the defendants in that case, 384 U.S. at 826, 86 S.Ct. at 1811.

(1) the federal statutory right to remain on the property of a restaurant proprietor after being ordered to leave, despite a state law making it a criminal offense not to leave, and (2) the further federal statutory right that no State should even attempt to prosecute them for their conduct.

By contrast, no federal law conferred on the *Peacock* defendants an absolute right to do what they were charged with having done, and "no federal law confers immunity from state prosecution on such charges." 384 U.S. at 827, 86 S.Ct. at 1812 (footnote omitted). The meaning of the latter phrase was amplified in fn. 25 which, after quoting the no person shall "punish or attempt to punish" language of § 203(c) of the Civil Rights Act of 1964, went on to say, "None of the federal statutes invoked by the defendants in the present case contains any such provision." This conclusion was followed with a cross-reference to fn. 3, which set forth the contrasting language of 42 U.S.C. § 1971(b), quoted *supra,* which is in relevant respects almost identical to § 3617 of the Fair Housing Act. It is worth noting that § 203 of the Civil Rights Act of 1964 also contains a provision, § 203(b), prohibiting intimidation, threats or coercion. Yet the Court in *Rachel* relied solely on the "punish or attempt to punish" language of § 203(c). Thus it seems clear that although the Court in *Rachel* and *Peacock* interpret-

ed the permissible range of removal under § 1443(1) to be slightly broader than that indicated in *Strauder* and *Rives*, the scope of the intended expansion was limited to statutes containing explicit anti-prosecution language, as was the case with § 203(c) of the Civil Rights Act of 1964 in *Rachel*.[4]

It is apparent that 42 U.S.C. § 3605 furnishes no basis for removal. Unlike the West Virginia statute in *Strauder* there is nothing facially unconstitutional in New York's foreclosure law. Section 3605 likewise does not bring the case within *Rachel*. Neither in text nor by fair implication does that section endow a person who considers himself a victim of discrimination in the financing of housing with a right to take the law into his own hands, as did § 201 of the Civil Rights Act of 1964, and refuse to make payments of interest or principal. His remedy is to make a complaint to the Secretary of HUD, § 3610(a), implicating a right to sue in a district court under § 3610(d), or to bring a suit in a district court or state court under § 3612 without prior resort to the Secretary. In such suits the court, upon a proper showing, may grant appropriate injunctive relief. In the absence of such an injunction nothing in § 3605 prohibits a mortgagee from bringing a foreclosure action, such as that provided in N.Y. RPAPL art. 13. If the mortgagors should plead a violation of § 3605 as a defense, nothing in New York's foreclosure statute or the practice under it would preclude a New York court from giving appropriate consideration to the plea.

A foreclosure action is equitable in its nature, even though the right to foreclose is based on legal rights, and it is within the province of a court of equity to see to it that a party invoking its aid shall have dealt fairly before relief is given. (Footnotes omitted.)

38 N.Y.Jur. § 318, at 619; see *Notey v. Darien Construction Corp.*, 41 N.Y.2d 1055, 364 N.E.2d 833, 396 N.Y.S.2d 169 (1977); *Baldwin-Bellmore Federal Savings and Loan Association v. Stellato*, 55 Misc.2d 1043, 1044, 287 N.Y.S.2d 516, 518 (1968); *Griffo v. Swartz*, 61 Misc.2d 504, 512, 306 N.Y.S.2d 64, 74 (1969); 15 Carmody-Wait § 92.161 (2d ed. 1967). In particular, New York recognizes the "clean hands" requirement in foreclosure actions, see *Dry Dock Savings Institution v. Harriman Realty Corp.*, 150 Misc. 860, 861, 270 N.Y.S. 428 (1934), under which courts will not assist a party when the right asserted is contrary to the public interest, 20 N.Y.Jur. § 107, at 131. New York's Human Rights Laws, N.Y. Exec. Law § 296–a, declare the State's policy against racially discriminatory practices in relation to credit. Since New York law does not permit infringement of any federal right Elan might possess, there is no basis for the prediction, as there was in *Strauder* and *Rachel*, that the state court would deny federal rights as a result of following state law.

We find equally little force in Elan's argument that whatever might otherwise have been the case, Emigrant's bringing the foreclosure action after it had knowledge of Elan's complaints to federal and state bank agencies [5] was prohibited by § 3617, just as prosecution under the Georgia trespass statute was forbidden by § 203(c) of the Civil Rights Act of 1964. The argument ignores the distinction drawn in *Peacock, supra*, 384

---

**4.** The Fifth Circuit, whose decision, 347 F.2d 679 (1965), was reversed in *Peacock*, has taken the position that all that was meant by fn. 25 of *Peacock* was that at the time the charges were brought there was no federal statute prohibiting intimidation etc. of persons *assisting* others in exercising their rights to vote, rather than as contrasting the prohibition against punishment in § 203(c) of the Civil Rights Act of 1964 with the prohibition against intimidation in other statutes. *Whatley v. City of Vidalia*, 399 F.2d 521, 522–23 (1968). We have indicated serious doubt about this interpretation, *New York v. Davis, supra*, 411 F.2d at 754 n.3; *New York v. Horelick*, 424 F.2d 697, 702–03 n.4 (2 Cir.),

cert. denied, 398 U.S. 939, 90 S.Ct. 1839, 26 L.Ed.2d 273 (1970), and now reject it as not a fair reading of *Peacock*.

**5.** Judge Sifton overruled Emigrant's argument that Elan was not within the retaliation provision, § 3617, since it had complained only to state banking authorities and the FDIC rather than to the Secretary of HUD. He relied on 42 U.S.C. § 3608(c) and Executive Order No. 12,-259, 46 F.R. 1253 (1981), providing that all executive departments and agencies shall cooperate with the Secretary to further the purpose of the Fair Housing Act, so that a complaint to the FDIC would fall within the ambit of activities with which 42 U.S.C. § 3617 prohibits in-

U.S. at 827 & n.25, 86 S.Ct. at 1812 & n.25, between the "punish or attempt to punish" language of § 203(c) and language which speaks of coercion, intimidation, etc., see pp. 674–675, *supra.* Under the former language the very bringing of the state prosecution against a member of the protected class violates federal law and no purpose is served by making a class member present in a state court a defense which that court is bound to accept. Under the latter type of statute there would have to be a preliminary determination whether the bringing of the foreclosure action was or was not a forbidden "intimidation". Furthermore, where as here the asserted intimidation is a civil action to enforce property rights, it is not clear that dismissal is demanded.

To accept Elan's claim for removal would, as said in *Peacock, supra,* 384 U.S. at 831, 86 S.Ct. at 1814, disregard the words of the removal statute and a construction now dating back for over a hundred years. The result of *Rachel* and *Peacock,* strongly criticized by the four *Peacock* dissents, was to leave that construction unchanged, save under the "narrow circumstances" of *Rachel,* 384 U.S. at 804, 86 S.Ct. at 1796. As was mentioned in *Peacock,* 384 U.S. at 834–35 & n.34, 86 S.Ct. at 1816 n.34, the 1964 Congress deliberately passed over a proposal to broaden civil rights removal. The Court noted in *Johnson v. Mississippi, supra,* 421 U.S. at 228, 95 S.Ct. at 1599, that when *Peacock* was decided, there had been introduced in Congress 12 bills which would have enlarged civil rights removal, but that none of these was ever reported. Sixteen years have passed since *Peacock,* and seven since *Johnson,* but the civil rights removal statute remains unchanged. *Peacock* had been decided nearly two years before the Fair Housing Act was passed. If the framers of that statute had desired to afford a right of removal of actions for the foreclosure of mortgages alleged to be tainted by a breach of the Act, or to do the same with respect to violations of other provisions such as § 3604 (discrimination in sale or rental of housing), it would have been easy to say so.

We have recognized that a case might arise in which the Fair Housing Act would justify removal under 28 U.S.C. § 1443(1), see the hypothetical in *New York v. Davis, supra,* 411 F.2d at 753. Here we hold only that under the rule of *Strauder* and *Rives* as modified and explicated in *Rachel* and *Peacock* a mortgagor cannot remove a foreclosure action based upon allegations that refusal to restructure the mortgage was racially motivated and that the action was brought because of its complaints on that score where the state's foreclosure law is not in conflict with any federal law or the Constitution. This is not one of those "rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Peacock, supra,* 384 U.S. at 828, 86 S.Ct. at 1812.

In light of our decision we have no occasion to consider Emigrant's argument that a foreclosure action is not an action "against any person" within 28 U.S.C. § 1443(1).

Judgment affirmed.

---

terference. Under our view of the case it is unnecessary to pass upon the correctness of this ruling.