Duncan ROBINSON and Elizabeth Robinson, Plaintiffs,

v.

Marjorie EICHLER and There's No Place Like Home, Inc., Defendants.

Civ. No. 3:92CV00269 (TFGD).

United States District Court, D. Connecticut.

June 11, 1992.

---

Joseph D. Garrison, Janet Arterton, Garrison & Arterton, New Haven, Conn., for plaintiffs. .

Judith D. Meyer, William R. Breetz, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Conn., for defendants.

Lawrence Berliner, Office of Protection & Advocacy, Hartford, Conn., for Eliot Dober, intervenor-defendant.

Eileen Penner, William Barr, Atty. Gen., for amicus curiae.

## RULING ON MOTION TO REMAND

DALY, District Judge.

Following the defendants' removal of this case from Connecticut Superior Court, the plaintiffs have moved to remand the matter pursuant to 28 U.S.C. § 1447(c). The defendants object to the motion, arguing that removal was proper pursuant to either 28 U.S.C. § 1441(b) or 28 U.S.C. § 1443(1). For the reasons stated herein, the plaintiffs' motion to remand is granted, the Court lacking jurisdiction on the present record.

## BACKGROUND

Duncan and Elizabeth Robinson ("the Robinsons" or "the plaintiffs") commenced this action in Superior Court in New Haven seeking to enjoin Marjorie Eichler and There's No Place Like Home, Inc.[1] (collectively "the defendants") from taking possession of property located at 150 Huntington Street, New Haven, Connecticut. The property and the twenty-one room building thereon (collectively "the property") are currently owned by Albertus Magnus College ("the college"), which utilized the building as a student dormitory until 1991 under a use variance issued by the City of New Haven. The defendants have contracted to purchase the property to house Ms. Eichler and her family. Ms. Eichler's family consists of her adult son, his wife and ten minor children. Six of the children are adopted, the remaining four are foster children awaiting adoption; all ten children are handicapped and members of a minority group.

---

1. There's No Place Like Home, Inc., a non-profit corporation, is a permanent family residence licensed by the Connecticut Department for Children and Youth Services ("DCYS"). The residence houses foster children assigned to it by DCYS.

The Robinsons own a home adjacent to the property and contend that the defendants' intended use of the property as a permanent residence for Ms. Eichler and her family would violate the applicable New Haven zoning ordinance. Both the Robinsons' home and the property are zoned in a so-called "RS 1 District," which limits use of property therein to single-family homes. New Haven Zoning Ordinance, Art. I, § 11. The City of New Haven has defined the term "family" as "[o]ne or more persons related by blood, marriage, or adoption ...; *or* a group of not more than four persons who need not be so related, ... who are living together in a single dwelling unit and maintaining a common household." New Haven Zoning Ordinance, Art. I, § 1 (emphasis added).

Based on their contention that the defendants' intended use would violate the ordinance, the Robinsons applied for injunctive relief in Superior Court, alleging that, in the absence of a zoning variance, this use of the property by Ms. Eichler will cause the plaintiffs to suffer immediate and irreparable harm for which they have no adequate remedy at law. Compl. at ¶ 16.

The case was assigned to the Honorable William J. Sullivan, Superior Court Judge, who is assigned to the New Haven Judicial District. On May 18, 1992, the parties appeared before Judge Sullivan on plaintiffs' application for a temporary restraining order to prevent the defendants from occupying the residence.[2] At this initial appearance, Judge Sullivan ordered the parties to maintain the status quo until the hearing on the application was completed, stating that "nobody is going to go behind my back and move those people in while I'm waiting to hear this case." May 18, 1992 Tr. at 15. When Judge Sullivan recessed for the day, he reiterated his order that the parties maintain the status quo. "I don't know what the situation with that home is right today, but whatever it is right at this moment that's the way it's to remain until this matter is heard by the Court." *Id.* at 26.

The hearing continued on May 26, 1992. Prior to taking evidence, Judge Sullivan first heard the parties on several pending motions, including motions to intervene filed by the Ronan–Edgewood Neighborhood Association ("the Neighborhood Association")[3] and Eliot Dober.[4] Judge Sullivan permitted these two parties to intervene.

Defendants next raised their concern regarding Judge Sullivan's order to maintain the status quo.

> MR. BREETZ: [T]his Court has an existing order that was entered on the record when we were before your Honor last week in which you enjoined or ordered that the parties not occupy the premises during the pendency [of the hearing.]
>
> THE COURT: I think I said the status quo would remain until the matter is resolved.
>
> MR. BREETZ: I believe that's right your Honor. And I believe the effect of that, if we chose to occupy, is to prevent us from occupying the premises and to make them unavailable to us. Since the plaintiffs in their own complaint have alleged, and we have agreed, that there are four foster children residing with Mrs. Eichler, the effect of the Court's order is to make unavailable to Mrs. Eichler and her adopted children and the four foster children housing solely because of the familiar [sic] status of those children. So we're going to at this time ask the Court to lift its restraining order—
>
> \* \* \* \* \* \*
>
> I just want to complete for the record, your Honor, the fact that the temporary

---

**2.** The closing on the property is presently scheduled for June 16, 1992, and the defendants plan to take possession shortly thereafter.

**3.** The Neighborhood Association, a voluntary organization of homeowners in the RS 1 zoning district encompassing the property at issue, moved to intervene as a plaintiff.

**4.** Mr. Dober, the Executive Director of the Connecticut State Office of Protection and Advocacy for Persons with Disabilities, moved to intervene as a defendant.

restraining order in our judgment is in violation of federal law today.

THE COURT: First of all, there's no temporary restraining order.

MR. BREETZ: Well, I don't know what you call it, your Honor, when you tell me that the status quo has to remain—

THE COURT: The status quo shall remain, right.

MR. BREETZ: Well, that means we can't occupy the premises unless we have some other interpretation of that. If the Court's view is that we may occupy, then I have no objection.

THE COURT: No, that's not the Court's view at all.

\* \* \* \* \* \*

MR. BREETZ: I would ask the Court to rule on it at this time, if it would, on the question of lifting [the] temporary injunction.

THE COURT: The Court reserves decision. Otherwise the status quo remains, unless it's changed.

May 26, 1992 Tr. at 20–23. Later in the hearing Judge Sullivan clarified the scope of his order.

THE COURT: [M]y order has nothing to do with the sale of this property. I'm not ordering the State not to buy this property. I'm ordering the property remain in status quo as far as who lives there until we get this issue [the motion of temporary restraining order] resolved. But you can buy it. My order doesn't preclude anybody from buying this property. That's what I want to be sure that that's clear on the record.

MR. BREETZ: I'd like the record to be clear, your Honor, that nobody is going to buy the property that they can't use for it's [sic] intended purpose.

THE COURT: That may be but—

MR. BREETZ: What the Court has done by prohibiting the purchaser from using the property for its intended purposes is effectively prevent the sale from going forward. The State is certainly not going to provide funds to purchase a permanent family residence if it cannot be used as a permanent family residence.

And that is certainly the effect of the Court's order.

THE COURT: My order does not preclude the sale of that house. That's all I'm saying.

*Id.* at 42–44.

Judge Sullivan also heard argument on defendants' motion to dismiss. The sole basis for the motion, as the Court can glean from the record, is the plaintiffs' alleged failure to exhaust their administrative remedies by applying to the City of New Haven Zoning Board for an advisory ruling. The defendants thus contended that Judge Sullivan lacked subject matter jurisdiction over plaintiffs' action. *Id.* at 28. Judge Sullivan denied the motion to dismiss without prejudice to renewal at the close of the hearing. *Id.* at 45.

Judge Sullivan next inquired into the disabilities of the children who would be moving onto the property with Ms. Eichler. Defendants' counsel refused to divulge this information claiming that a state statute prohibited him from disclosing publicly the nature of the children's handicapped conditions. *Id.* at 46.

THE COURT: [to Mr. Breetz] I'm going to tell you right now, I want to know what that disability is. This hearing is going to be very short if I don't find out what it is.

MR. BREETZ: Your Honor, I cannot tell you because I would be in violation of state law if I—

THE COURT: You'll be in violation of a court order if you don't tell me.

MR. BREETZ: Your Honor, I cannot tell you.

\* \* \* \* \* \*

MR. BERLINER [counsel for Mr. Dober]: As Attorney Breetz has pointed out, there may be statutes on confidentiality, which we hope to cure upon reconvening, hopefully after lunch.

\* \* \* \* \* \*

THE COURT: Okay. And you're saying that at 2:00 o'clock you think you will have a case that will cure this problem, is that what you're saying?

MR. BERLINER: I will confer with Mr. Breetz, and I would hope that we would have an answer for the Court.

\* \* \* \* \* \*

THE COURT: I'll wait for you at 2:00 o'clock.

\* \* \* \* \* \*

MR. BREETZ: Your Honor, I ask you to recognize that I'm not one who lightly ignores a court order. This is a very serious matter.

THE COURT: What's your citation, what's your authority for not divulging this?

MR. BREETZ: Your Honor, I would prefer to discuss at least that aspect in chambers.

THE COURT: I'm asking you, do you have authority?

MR. BREETZ: I believe I have authority, your Honor.

THE COURT: Okay, What is it? What's the statutory cite or the case cite? That's all I'm asking you. I have a law clerk right over there that's going to go check these out, that why I'm asking you.

*Id.* at 46–47, 57–58, 75–76. Judge Sullivan then recessed for lunch.

On returning from the lunch recess, rather than providing the legal authority for preserving the confidentiality of the disabilities, defendants informed Judge Sullivan that they had removed the case to this Court, divesting the state court of jurisdiction immediately.

The plaintiffs have now moved to remand the case to state court, arguing that the defendants' notice of removal was improper. Given the impending June 16, 1992 deadline for closing on the sale of the property, the Court granted the plaintiffs' motion for expedited consideration. Defendants have opposed the motion to remand, contending that removal was proper under either 28 U.S.C. § 1443(1) or § 1441(b). More specifically, the defendants contend that both the plaintiffs' suit and Judge Sullivan's order enjoining the defendants

from taking possession of the property raise federal questions under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Developmental Disabilities Act ("DDA"), 42 U.S.C. § 6000, *et seq.*, such that the Court has removal jurisdiction over this case. For the reasons stated below, the motion to remand is granted.

## DISCUSSION

I. *Removal Pursuant to 28 U.S.C. § 1443(1).*

■ The defendants first argue that removal was proper pursuant to 28 U.S.C. § 1443(1). Section 1443(1) provides in pertinent part that any civil action commenced in state court may be removed by a defendant to federal district court when that defendant "is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1). The Supreme Court has established a two-pronged test to determine whether removal pursuant to § 1443(1) is appropriate. "First, it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.' ... Second, it must appear ... that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of [the] State.'" *Johnson v. Mississippi*, 421 U.S. 213, 219, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966)).

In limiting the scope of § 1443(1) only to permit removal under civil rights statutes "stated in terms of racial equality," the Supreme Court relied on the provision's legislative history. As the *Rachel* Court noted, "[t]he present statute is a direct descendent of a provision enacted as a part of the Civil Rights Act of 1866." 384 U.S.

at 786. In tracking the changes in the language of § 1443(1), and in particular the statutory amendments made when the Revised Statutes of 1874 were compiled, the Supreme Court found that "Congress' choice of the open-ended phrase 'any law providing for ... equal civil rights' was clearly appropriate to permit removal in cases involving 'a right under' both existing and future statutes that provided for equal civil rights." *Id.* at 789, 86 S.Ct. at 1788. The *Rachel* Court cautioned, however, that

> [t]here is no substantial indication, however, that the general language of [§ 1443(1)] was intended to expand the kinds of 'law' to which the removal section referred. In spite of the potential breadth of the phrase 'any law providing for ... equal civil rights,' it seems clear that in enacting [§ 1443(1)], Congress intended in that phrase only to include laws comparable in nature to the Civil Rights Act of 1866.

*Id.* at 789–791, 86 S.Ct. at 1788–90. The Supreme Court then noted that "the legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights, *specifically defined in terms of racial equality.*" *Id.* at 791, 86 S.Ct. at 1789 (emphasis added). Accordingly, the *Rachel* Court concluded that "[o]n the basis of the historical material available, we conclude that the phrase 'any law providing for ... equal civil rights' must be construed to mean any law providing for civil rights stated in terms of racial equality." *Id.* at 792, 86 S.Ct. at 1790.

█ The record in the case at bar indicates that all of the children seeking to move into the property are either black or Latino. The defendants concede, however, that their petition is not based on alleged racial discrimination. Rather, they contend that the civil rights at stake are related to familial status under the FHA,[5] arguing that "§ 1443 removal is proper in cases

where the right invoked is based upon a statutory civil rights law which protects classes of persons to whom Congress granted equal rights." Mem. in Opp. at 16.

The Court does not read *Rachel* and its progeny that broadly, however. The case law makes clear that § 1443(1)'s scope is very narrow, applying only in cases where a defendant seeks to remove a state cause of action based upon alleged racial discrimination. In each of the cases cited by the defendants, the removal petitioner alleged racial discrimination under a specific civil rights statute, whether the removal ultimately proved successful or not. *See, e.g., Johnson,* 421 U.S. at 213, 95 S.Ct. at 1593 (removal petitioners alleging racial discrimination pursuant to the Civil Rights Act of 1968 unsuccessfully sought to remove a criminal prosecution for conspiracy to boycott); *Sofarelli v. Pinellas County,* 931 F.2d 718, 725 (11th Cir.1991) (removal petitioner alleging violation of the FHA based on race discrimination successfully removed civil action seeking to enjoin his moving a house into a neighborhood); *Emigrant Sav. Bank v. Elan Management Corp.,* 668 F.2d 671, 676 (2d Cir.1982) (removal petitioner alleging violation of the FHA based on racial discrimination unsuccessfully sought to remove a civil foreclosure action); *People v. Davis,* 411 F.2d 750, 752 (2d Cir.1969) (removal petitioner alleging violation of the FHA based on racial discrimination unsuccessfully sought to remove a criminal prosecution for menacing). Therefore, as the defendants concededly do not base their petition on alleged racial discrimination in violation of the FHA, § 1443(1) does not provide authority for removal.

## II. *Removal Pursuant to 28 U.S.C. § 1441(b).*

The defendants next argue that removal is appropriate under 28 U.S.C. § 1441(b). Section § 1441(b) provides in pertinent part that "[a]ny civil action of which the district

---

5. To the extent that the defendants base their removal petition on either the ADA or the DDA, the Court finds § 1443(1) inapplicable as neither statute is stated in terms of racial equality.

courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "A defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (emphasis in original). As the Second Circuit has recently stated, "[f]ederal question jurisdiction generally exists only when a well-pleaded complaint raises issues of federal law *on its face.*" *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 8 (2d Cir.1992) (emphasis added). "The federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed and the case enters into the federal system. It is insufficient that a federal question has been raised as a matter of defense or as a counterclaim." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 255–260 (2d ed. 1985); *see Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ Apparently conceding that plaintiffs' complaint does not assert a claim arising under federal law on its face, the defendants argue that the Court has removal jurisdiction under any one of three so-called "exceptions" to the well-pleaded complaint rule. First, the defendants contend that the effect of the filing of plaintiffs' complaint and Judge Sullivan's order maintaining the status quo combine to violate the FHA in that the suit and the order "have the intended effect of making housing unavailable, solely, and expressly on the basis of familial status," thus constituting a "discriminatory housing practice" in violation of 42 U.S.C. § 3602. Defts' Mem. in Opp. at 24–25. As a result, the defendants contend, the underlying claim is federalized and removal pursuant to § 1441(b) thereby appropriate.

The Court finds this argument unpersuasive. Initially, the Court notes that the "federalizing" of a state claim as set forth by the defendants is not a "clear exception" to the well-pleaded complaint doctrine. *See id.* at 24. Nor do the cases cited by the defendants support the recognition of such an exception. The defendants rely primarily on *Sofarelli, supra,* arguing that the Eleventh Circuit's finding that a claim under the FHA "presents a federal question for purposes of federal question jurisdiction" supports removal under § 1441(b). *Sofarelli,* 931 F.2d at 725. That case stands for no such proposition. In *Sofarelli,* a defendant petitioned to remove a suit filed against him, alleging in a counterclaim that the plaintiffs had racial motivations for attempting to prevent him from moving a house into the neighborhood, which house he would then seek to sell. The Eleventh Circuit held only that removal pursuant to § 1443(1) was proper. *Id.* That was the only removal issue before that Court; § 1441(b) removal was never raised by the parties, let alone addressed by that Court. Other cases cited by the defendants are similarly distinguishable.

■ The defendants next argue that removal is appropriate because the FHA has preempted the New Haven zoning ordinance at issue in this case. This argument is likewise unavailing. The Supreme Court has stated clearly that the defense of preemption does not usually permit removal to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). "Federal preemption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.* The defendants apparently rely, however, on a recognized exception to this general rule. "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so *completely pre-empt* a particular area that any civil

complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546–47 (emphasis added). Preemption is primarily a question of congressional intent. *Id.* at 66, 107 S.Ct. at 1547.

The defendants contend that § 3615 of the FHA indicates that Congress intended to preempt the New Haven zoning ordinance. Section 3615 provides in part that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615. The defendants argue that § 3615 effectively preempts the New Haven zoning ordinance because the ordinance will allegedly have the "unavoidable effect" of preventing foster children from living anywhere in the City of New Haven, a violation of the FHA in defendants' view. Defts' Mem. in Opp. at 27–28. Whether or not defendants accurately predict the "unavoidable effect," the Court finds the preemption argument unavailing.

The Court does not find that the FHA has so strong a preemptive effect that it has displaced local zoning ordinances such that a suit brought pursuant to such an ordinance is necessarily federal and thus may be removed to federal court. *See Crazy Eddie, Inc. v. Cotter,* 666 F.Supp. 503, 509 (S.D.N.Y.1987). As one district court has already noted, "section 3615 is not a preemption of a total field of law because it invalidates only those state laws which *conflict* with federal law." *Familystyle of St. Paul, Inc. v. City of St. Paul,* 728 F.Supp. 1396, 1400 n. 8 (D.Minn.1990) (emphasis in original). The defendants may very well have a complete defense to the plaintiffs' suit based on their claim that the FHA governs in this particular case, an issue the Court need not reach on the present record; standing alone, however, that fact does not confer federal jurisdic-

tion. "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936). As the Second Circuit has noted, "when a defendant argues not only that federal law preempts the state law on which a plaintiff relies but also that federal law provides no relief on the facts that plaintiff has alleged[,] ... federal law is interposed solely as a defense, and removal jurisdiction will not lie." *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). Accordingly, the Court finds that the FHA's alleged preemption of the New Haven zoning ordinance is raised solely as a defense and thus cannot provide grounds for removal under § 1441(b).[6]

 Finally, the defendants assert that the "real nature" of the plaintiffs' claim is a federal one, thereby permitting removal pursuant to § 1441(b). In essence, the defendants argue that the plaintiffs' complaint is "artfully pleaded" in an attempt to avoid federal jurisdiction. *See id.* "In its pristine form, the artful pleading doctrine is not a departure from the rule that plaintiff is master of his complaint. If a plaintiff has pled what must necessarily be a federal claim, he has no state law available to choose as the basis for his suit." *Id.,* 794 F.2d at 758. The "artful pleading" exception thus applies only in limited circumstances and usually applies in cases where federal law has allegedly preempted state law. *Id.*

The artful pleading doctrine assumes that the plaintiff could originally have filed suit in federal court, if not for the "artful" avoidance of an allegation of a claim arising under federal law. In the case at bar, however, the defendants make no showing that the plaintiffs could have initially filed

---

**6.** The defendants make no argument that either the ADA or the DDA has preempted the zoning ordinance.

their claim in federal court, a necessary predicate to removing any case. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). Instead, plaintiffs' claim for relief is based solely on the New Haven zoning ordinance. The only theory under which plaintiffs' claim could be federalized is based on alleged preemption of the zoning ordinance by federal law, thereby depriving the plaintiff of a state law basis for relief. This argument, however, has previously been rejected by the Court. *See supra* p. 1260. Accordingly, the "artful pleading" exception does not permit removal in this case.

The Court feels compelled to note that the apparent impetus for defendants' removal petition was neither the filing of plaintiffs' complaint nor Judge Sullivan's order enjoining defendants from occupying the property. The complaint was filed and the order imposed more than a week prior to the defendants' filing of the removal petition. Instead, the catalyst appears to have been Judge Sullivan's order requiring attorney Breetz to divulge the nature of the children's handicaps, which order was entered just prior to the luncheon recess in the state court proceedings. During that recess, the defendants filed their papers in federal court. As the defendants informed Judge Sullivan, "until we left the courtroom at lunch today, ... there had been no discussion whatever [sic] of proceeding in federal court with these parties." May 26, 1992 Tr. at 79–80. Judge Sullivan provided the defendants ample opportunity to provide legal authority as to why he could not require them to divulge the information, giving them until after the lunch recess to provide that authority. Even though the

defendants claimed they had such authority, rather than providing it to Judge Sullivan, they filed their papers to remove the case to federal court.

The Court is left to speculate whether the defendants real motivation for leaving state court was their desire to avoid complying with Judge Sullivan's disclosure order. In any event, whatever their true motivations, the effect of defendants' decision to remove the case has been a delay of the swift resolution of this case. There was, and is, no reason to believe, at least on the present record, that the state courts in general, and Judge Sullivan in particular, are either incapable of or unwilling to apply the FHA, the ADA or the DDA properly to the facts of this case.

## CONCLUSION

In view of the foregoing, plaintiffs' motion to remand is hereby GRANTED. This matter is hereby ORDERED remanded to Connecticut Superior Court, and the notice of removal hereby ORDERED dismissed.[7] The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

---

7. The above memorandum constitutes the written opinion issued pursuant to the Court's June 5, 1992 filed Ruling remanding this case to Superior Court.