In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-1067

ERNEST B. FENTON and
LAW OFFICE OF ERNEST B. FENTON, P.C.,

*Plaintiffs-Appellees*,

*v.*

KELLI DUDLEY; LAW OFFICE OF
KELLI DUDLEY; ANDREW SIDEA; and
LAW OFFICE OF ANDREW SIDEA, P.C.,

*Defendants-Appellants*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cv-05019 — **Rebecca R. Pallmeyer**, *Judge*.

———————————

ARGUED MAY 28, 2014 — DECIDED AUGUST 1, 2014

———————————

Before FLAUM, MANION, and TINDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. This appeal concerns the conditions under which a defendant may remove a case to federal court pursuant to the civil rights removal statute, 28 U.S.C. § 1443. We conclude that § 1443 was not satisfied in this case, and therefore affirm the district court's remand order.

## I. Background

In 2010, Tonya Davis retained Ernest Fenton to represent her in connection with a home foreclosure proceeding. Davis later sued Fenton for malpractice. Davis claimed that, although she paid Fenton several thousand dollars for legal assistance, he did virtually nothing to help her keep her home. She also claimed that he targeted her for inferior service based on her race, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* That case, *Davis v. Fenton*, is currently stayed in federal district court pending arbitration. No. 1:13-cv-3224, 2014 WL 544974 (N.D. Ill. Feb. 7, 2014).

The complaint in the *Davis* case was filed in 2013. Shortly thereafter, Fenton brought his own lawsuit in state court, not against Davis but against Davis's lawyers: Kelli Dudley and Andrew Sidea. Fenton alleged that Dudley and Sidea had intentionally spread false information about him to his clients and business associates. Fenton also alleged that Sidea, who had previously worked at Fenton's law office, had improperly obtained confidential information about Fenton's clients and shared it with Dudley. The complaint advanced claims of conversion, tortious interference with a business relationship, and defamation, and it sought damages and an injunction.

After learning of Fenton's state-court complaint, Dudley and Sidea filed a notice of removal in federal district court. They asserted as bases for removal both the general removal statute, 28 U.S.C. § 1441, and the more specialized civil rights removal statute, 28 U.S.C. § 1443. Three days later, despite acknowledging the ongoing removal proceedings, the Cook County Circuit Court entered an ex parte preliminary injunction against Dudley and Sidea. The injunction ordered

them to stop defaming Fenton and to cease contact with any of his current or former clients.

Back in federal court, Fenton filed a motion to remand the *Fenton v. Dudley* case to state court. The district court found that the case did not meet the removal requirements under either 28 U.S.C. § 1441 or § 1443 and granted the motion. Generally, remand orders are not appealable, but there is an exception when a case is removed pursuant to § 1443. *See* 28 U.S.C. § 1447(d). We must therefore decide whether the district court was correct to return the case to state court or whether the district court in fact had jurisdiction under the civil rights removal statute.

## II. Discussion

As a preliminary matter, we note that the Cook County Circuit Court's decision to enter an injunction after the case had been removed to federal court is clearly contrary to 28 U.S.C. § 1446(d), which provides that, once a defendant has filed a notice of removal with the state court, the state court may "proceed no further *unless and until* the case is remanded" (emphasis added). *See also Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 249 (4th Cir. 2013) ("[A]ny post-removal actions taken by the state court in the removed case action are void *ab initio*."). Dudley and Sidea have not asked us to take any action with respect to the state-court injunction, although we understand that they hope to move the district court to dissolve the injunction following our decision on removal. Nevertheless, like the district court, we are troubled that a state court would disregard § 1446's clear command, especially

because the face of the injunction order reveals that the state court recognized that the defendants had initiated removal.[1]

### A.

The civil rights removal statute provides for the removal from state court of any civil action or criminal prosecution "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States." 28 U.S.C. § 1443(1). A second subsection provides for removal under other special circumstances, but it is not relevant to this case.

Dudley and Sidea argue that Fenton's lawsuit is calculated to deny them their rights under section 818 of the Fair Housing Act. That section makes it "unlawful to coerce, intimidate, threaten, or interfere with any person … on account of his having aided or encouraged any other person in the exercise or enjoyment of[ ] any right granted or protected by" the Act. 42 U.S.C. § 3617. Fenton's complaint alleges in part that the defendants have "conspired to advance Mrs. Dudley's law practice by filing suits in federal court without regard of the substantive value of the same"—proof, in their view, that Fenton is retaliating against them for helping Tonya Davis bring her Fair Housing Act claim.

Dudley and Sidea further argue that they have been denied or cannot enforce their federal aid-or-encourage right in Illinois state courts. In particular, they argue that the state

---

[1] The handwritten order states: "This motion before the court on plaintiff's Motion For Preliminary Injunction; plaintiffs' counsel being present; defendants not present; the court being advised in the premises including the Notice of Removal filed by defendants; it is hereby ordered that … ."

court's injunction—which prohibits them from contacting "any former or current client and/or employee of the Law Offices of Ernest B. Fenton"—makes it impossible for them to exercise their (or their client's) Fair Housing Act rights. Read literally, the injunction would prevent Dudley and Sidea from speaking to their client, since Davis is Fenton's former client; to any other of Fenton's clients, in order to substantiate Davis's claim; and even to each other, since Sidea was briefly Fenton's employee. The result, they say, is a complete inability to prosecute Davis's case.

**B.**

To evaluate these arguments, we first turn to a pair of Supreme Court decisions issued on the same day in 1966: *Georgia v. Rachel*, 384 U.S. 780, and *City of Greenwood v. Peacock*, 384 U.S. 808. The defendants in both cases sought to remove state criminal prosecutions to federal court under § 1443(1). The defendants in *Rachel* were arrested and charged with criminal trespass after staging sit-ins at restaurants in Atlanta; the defendants in *Peacock* were arrested and charged with obstructing the public streets after registering African-American voters in Mississippi. Both sets of defendants claimed that their activity—the sit-ins in *Rachel* and the voter registration in *Peacock*—was federally protected and that their arrests and prosecutions were racially motivated. And both claimed that they could not enforce their federal rights in the Georgia and Mississippi courts, respectively.

A defendant who seeks to remove a case under § 1443(1) must first show that her claim involves "a right under any law providing for … equal civil rights." 28 U.S.C. § 1443(1). *Rachel* clarified that "laws providing for equal civil rights" are limited to those "rights specifically defined in terms of

racial equality." 384 U.S. at 791. More general sources of equality rights, like the Due Process Clause, or rights framed in nonracial terms do not suffice. *Id.* at 791–92. That requirement is met here. The Fair Housing Act, which Dudley and Sidea rely on, is framed in racial equality terms. *E.g.*, 42 U.S.C. § 3604 (prohibiting various types of discrimination in housing because of race).

In addition to identifying a civil-equality right, a defendant seeking to remove under § 1443(1) must make a second showing: that she has been "denied or cannot enforce" that right in state court. Initially, this required the defendant to point to some state law or constitutional provision that was discriminatory on its face. *Compare Strauder v. West Virginia*, 100 U.S. 303 (1879) (removal was proper where the state statute formally excluded African-Americans from jury service), *with Virginia v. Rives*, 100 U.S. 313 (1879) (removal was not proper where, although African-Americans were allegedly excluded from jury service as a matter of course, the state statute was formally neutral). Suffice it to say that Dudley and Sidea have pointed to no blatantly discriminatory provision of Illinois law that would meet this standard.

But *Rachel* recognized an exception to this rule: "even in the absence of a discriminatory state enactment," the Court held, removal could be proper if "an *equivalent basis* could be shown for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." 384 U.S. at 804 (emphasis added). The Court reasoned that this limited exception was consistent with the purposes behind the "formal expression" requirement—allowing removal only where it was clear *before* trial that the defendant would be denied his federal

equality rights, and avoiding the "unseemly" task of federal judges assessing the "likely disposition of particular federal claims" by the state judiciary. *Id.* at 803.

The Court proceeded to explain why the *Rachel* defendants met this new equivalent-basis exception. Section 203(a) of the Civil Rights Act of 1964 gave the defendants the right to equal enjoyment of any place of public accommodation without discrimination because of race. *Id.* at 793. Moreover, just the previous term, the Supreme Court had construed section 203(c) of the Act to prohibit not only the conviction, but also the "prosecution of any person for seeking service in a covered establishment, because of his race or color." *Id.* (quoting *Hamm v. City of Rock Hill*, 379 U.S. 306, 311 (1964)). If the defendants' allegations proved true, then the "mere pendency of the [criminal trespass] prosecutions" deprived them of their federal right "to be free of any attempt to punish them for protected activity." *Id.* at 805 (internal quotation marks omitted). The basis for the clear prediction that the defendants could not enforce their federal-equality rights in state court was thus plain: "The burden of having to defend the prosecutions is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964." *Id.*

The equivalent-basis exception announced in *Rachel* is quite narrow, however, as *City of Greenwood v. Peacock* made clear. The defendants in *Peacock* had been charged with disturbing the peace and obstructing the streets while registering black voters. They brought suit under a variety of provisions, including 42 U.S.C. § 1971. The Court assumed that § 1971 was a law providing for equal civil rights, and so satisfied the first step of the removal test. 384 U.S. at 825. But it rejected the defendants' contention that they were "denied

or could not enforce" their federal rights in state court. "The present case differs from *Rachel* in two significant respects," the Court wrote. "First, no federal law confers an absolute right on private citizens … to obstruct a public street." *Id.* at 826. In *Rachel*, by contrast, the Civil Rights Act gave the defendants a right to be present in the restaurants despite being ordered to leave. "Second, no federal law confers immunity from state prosecution on such charges." *Id.* at 827. Again by contrast, in *Rachel* the defendants had a right not even to be prosecuted for exercising their rights under the Civil Rights Act.

To qualify for removal under § 1443(1), the Court underscored, "[i]t is not enough … to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court." *Id.* at 827. Thus unable to make a "clear prediction" that the defendants' rights would be denied or could not be enforced in state court, the Supreme Court ordered the case remanded. It emphasized that it was "not for one moment … suggest[ing] that the individual petitioners in this case have not alleged a denial of rights guaranteed to them under federal law." *Id.* at 828. Nevertheless, the remedy for that denial did not include removal to federal court. *Id.*

## C.

Returning to the case before us, the defendants briefly suggest that the state court's preliminary injunction is itself a "formal expression of state law" justifying removal. The injunction is indeed troubling, as we have indicated. But the Supreme Court has made clear that a "formal expression" of

state law means "a law of general application," *Rachel*, 384 U.S. at 800—something like "a state legislative or constitutional provision, rather than a denial first made manifest in the trial of the case," *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (internal quotation marks omitted). Whatever we may think of the injunction's merits, it purportedly applies only to the parties before the court; it is not a law of general application. So if Dudley and Sidea are to remain in federal court, they must show that their case fits into *Rachel*'s exception—that is, that federal law both (1) "confers an absolute right" on them to engage in the conduct Fenton accuses them of, and (2) "confers immunity" from being hauled into court on such grounds. *Peacock*, 384 U.S. 826–27.

We conclude that their argument founders at the first step. While the Civil Rights Act gave the defendants in *Rachel* an absolute right to remain in a place of public accommodation when asked to leave on the basis of race, the Fair Housing Act gives Dudley and Sidea no comparable right to commit defamation or interfere with a business relationship, even in service of their Fair Housing Act claim. Indeed, at oral argument counsel for the defendants admitted that the Act does not immunize the conduct at issue. In *Rachel*'s terms, section 818 of the Fair Housing Act does not "substitute[] a right for a crime." 384 U.S. at 805; *see also Hill v. Pennsylvania*, 439 F.2d 1016, 1021 (3d Cir. 1971). Of course, it may very well be that Dudley and Sidea did none of the things Fenton alleges; at this stage we are merely reading Fenton's complaint. But § 1443(1) does not alter the presumption that state courts as well as federal courts are competent to sort out the truth of these allegations. *See Peacock*, 384 U.S. at 828.

Because we conclude that federal law does not give Dudley and Sidea a right to engage in the conduct Fenton alleges—defamation, tortious interference with a business relationship, and conversion—there is no need to decide whether the Fair Housing Act gives them immunity even from being brought to trial on these claims as well. Nevertheless, because the district court indicated that it thought the defendants had not satisfied the second step, as well, we believe it worthwhile to devote a few words to the question.

**D.**

The Civil Rights Act has an anti-retaliation provision, section 203(b), that closely corresponds to section 818 of the Fair Housing Act, which Dudley and Sidea invoke. *Compare* 42 U.S.C. § 2000a-2(b) ("No person shall … intimidate, threaten, or coerce … any person with the purpose of interfering with any right or privilege secured by [the Civil Rights Act]."), *with id.* § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of … any right granted or protected by [the Fair Housing Act]."). In *Rachel*, however, the Supreme Court did not focus on section 203(b) of the Civil Rights Act. Instead, it rested its analysis on section 203(c), which provides that "[n]o person shall … *punish or attempt to punish* any person for exercising or attempting to exercise any right or privilege secured" under the Act. *Id.* § 2000a-2(c) (emphasis added). The Fair Housing Act has no analogous "punish or attempt to punish" prohibition.

In light of *Rachel*'s focus on section 203(c) of the Civil Rights Act, some courts—most prominently, the Second Circuit in *Emigrant Savings Bank v. Elan Management Corp.*, 668 F.2d 671 (1982)—have concluded that only cases involving a

statute with explicit anti-prosecution language are removable under § 1443(1). But other courts—like the Fifth Circuit in *Whatley v. City of Vidalia*, 399 F.2d 521 (1968)—have held that language of that sort is not necessary. For these courts, more generic "intimidate, threaten, or coerce" language in a statute may permit removal to federal court.

Describing the parameters of this dispute requires a circuitous tour through two cryptic footnotes in *Peacock*. As we said, the defendants in *Peacock* specifically cited 42 U.S.C. § 1971 in support of their removal petition. But that provision, originally enacted in the Civil Rights Act of 1957, was not entirely on point. The first subsection, § 1971(a), guarantees the right to vote free from racial discrimination; the second, § 1971(b), makes it unlawful to "intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote." (The *Peacock* defendants, remember, were arrested while *registering* others to vote, not while voting or attempt to vote themselves.) By contrast, a later statute, the Voting Rights Act of 1965, did speak directly to the defendants' alleged conduct. Section 11(b) of that Act, codified at 42 U.S.C. § 1973i(b), makes it unlawful to "intimidate, threaten, or coerce … any person for urging or aiding any person to vote." Yet the *Peacock* defendants did not cite section 11(b) in their removal petition— understandably, because the Voting Rights Act had not yet been enacted when they removed their case from Mississippi court.

In a footnote describing the basis of the defendants' claim for removal, the *Peacock* Court quoted the text of § 1971(a) and (b) (the provisions that did not strictly apply to the defendants' claim). But the Court appended a "see also" cita-

tion to section 11(b) of the Voting Rights Act, as well. *Peacock*, 384 U.S. at 811 n.3. Later, after observing that "no federal law confers immunity from state prosecution" on the defendants, *id.* at 827, the Supreme Court noted:

> Section 203(c) of the Civil Rights Act of 1964, the provision involved in … *Georgia v. Rachel*, explicitly provides that no person shall 'punish or attempt to punish any person for exercising or attempting to exercise any right or privilege' secured by the public accommodations section of the Act. *None of the federal statutes invoked by the defendants in the present case* contains any such provision. See note 3 and note 7, supra."

*Id.* at 827 n.25 (emphasis added and citations omitted).[2]

It is unclear what inference lower courts should draw from *Peacock*'s footnote 25 and its cross-reference to footnote 3. On the one hand, the *Peacock* defendants did not "invoke" section 11(b) of the Voting Rights Act in their removal petition; if they had, perhaps the Court would have found its "intimidate, threaten, or coerce" language broad enough to warrant removal. On the other hand, the Court singled out the "punish or attempt to punish" language in section 203(c) of the Civil Rights Act. And the Court was undoubtedly aware that section 11(b) at least arguably applied, for it cited that section along with 42 U.S.C. § 1971(b).

In *Whatley*, the Fifth Circuit adopted the former interpretation. *Whatley*, like *Peacock*, involved a state prosecution of defendants registering African-Americans to vote. This time,

---

[2] Footnote 7 in *Peacock* discussed the defendants' separate claim for removal under § 1443(2), the subsection that is not relevant here.

however, the defendants specifically invoked section 11(b) of the Voting Rights Act in their removal petition. The Fifth Circuit concluded that *Peacock* did not bar removal under § 1443(1). Even though section 11(b) lacked "punish or attempt to punish" language, the court reasoned that the provision was "a more, not less, sweeping prohibition of official acts of harassment against equal civil rights than the limited proscription of § 203(c) [in *Rachel*], since 'attempts to punish' are only one means of coercing, threatening, or intimidating." *Whatley*, 399 F.2d at 525 (quoting *North Carolina v. Hawkins*, 365 F.2d 559, 562 (4th Cir. 1966) (Sobeloff, J., concurring)). The Fifth Circuit surmised that *Peacock* had disallowed removal in similar circumstances simply because the defendants there had not invoked section 11(b). *Id.* at 525–26.

About a decade later, in a case (like ours) involving section 818 of the Fair Housing Act, the Second Circuit rejected *Whatley*'s reading of *Peacock*. *Emigrant Savings*, 668 F.2d at 675 n.4. In the Second Circuit's view, the *Peacock* footnotes and the fact that *Rachel* relied only on the "punish or attempt to punish" language in section 203(c) of the Civil Rights Act—and not the more generic anti-retaliation language in section 203(b)—showed that "the permissible range of removal … was limited to statutes containing explicit anti-prosecution language." *Id.* at 675. As a result, removal was not appropriate where the defendant merely alleged that the plaintiff brought an action to intimidate or coerce the defendant for exercising his federal rights. *Id.* at 676.

Although we do not decide, it may well be that the Second Circuit has the better interpretation. In particular, we note that the *Rachel* defendants' removal petition did not invoke the provision on which the Supreme Court ultimately

relied, either. *See Rachel*, 384 U.S. at 793 n.21 ("Since the petition predated the enactment of the Public Accommodations Title of the Civil Rights Act of 1964, it could not have explicitly alleged coverage under that Act. It recites facts, however, that invoke application of that Act on appeal."). This makes the Fifth Circuit's basis for distinguishing *Whatley* from *Peacock*—that the *Peacock* defendants did not specifically advance a section 11(b) theory before the Court—less convincing. Surely the *Peacock* defendants also recited facts that "invoked the application of" the Voting Rights Act on appeal. Indeed, the dissent in *Peacock* relied on section 11(b) to argue that the "state prosecutions themselves constitute a denial of 'a right under any law providing for the equal civil rights of citizens.'" 384 U.S. at 848 (Douglas, J., dissenting).

That said, the question is a close one, and plumbing the depths of the Court's infrequent pronouncements on this issue is unlikely to produce a totally satisfying answer.[3] As

---

[3] The Court last spoke to § 1443(1) in 1975, in *Johnson v. Mississippi*, 421 U.S. 213, but it did little to dispel the confusion surrounding this element of the *Rachel* test. In *Johnson*, the Court rejected removal based on a federal provision that made it unlawful "by force or threat of force" to "wilfully injure[], intimidate[], or interfere[] with" any person "applying for or enjoying employment, or any perquisite thereof, by any private employer." *Id.* at 223 n.11 (quoting 18 U.S.C. § 245(b)). The Court focused primarily on legislative history to determine that § 245(b) was directed towards racially motivated acts of violence, not prosecutions in state court. *Id.* at 225–27. In yet another footnote, the *Johnson* majority also noted "the similarity between the language of § 1971(b) [the provision actually, albeit unsuccessfully, invoked in *Peacock*] … and the comparable language of § 245(b)," but it did not elaborate further. *Id.* at 222 n.10. The majority did not mention section 11(b) of the Voting Rights Act.

The dissent rejected the majority's distinction for removal purposes between statutes that prohibit "punishment" versus merely "injury, in-

even Judge Friendly, the author of *Emigrant Savings*, admitted, "it is arguable that citation in a footnote would be a rather elliptical way to decide such an important question." *New York v. Horelick*, 424 F.2d 697, 702–03 n.4 (2d Cir. 1970).

At least in the courts of appeals, the debate has cooled after *Whatley* and *Emigrant Savings*. *Cf. Davis v. Glanton*, 107 F.3d 1044, 1050–51 (3d Cir. 1997) (noting that 42 U.S. § 1985(3) lacks any "punish or attempt to punish" language, but also noting that the statute's "intimidation" provision did not apply to the conduct at issue). Absent clarification from the Supreme Court, we will need to do our best to read between the lines in *Rachel* and *Peacock* if the anti-retaliation/anti-prosecution issue is squarely presented in a future appeal. For now, it is enough to say that we doubt that the Fair Housing Act gives Dudley and Sidea federal immunity even from having to defend this case in court.

### III. Conclusion

In *Johnson v. Mississippi*, Justice Marshall stated that "[t]he line between *Rachel* and *Peacock* is that between prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the petitioner, and prosecutions where the only grounds for removal are that the charge is false and motivated by a desire to discourage the petition-

---

timidation, or interference." *Id.* at 235–36 (Marshall, J., dissenting). It apparently agreed with *Whatley* that that *Peacock*'s holding did not involve section 11(b). *Id.* at 236 n.6. Nevertheless, the dissent also indicated—analogously to what we hold today in Part II.C—that even if that provision had applied, removal still would have been inappropriate in *Peacock* because the defendants' alleged conduct was not federally protected. *Id.*

er from exercising … a federal right." 421 U.S. at 234 (Marshall, J., dissenting) (internal quotation marks omitted). Even if Dudley and Sidea are correct that Fenton has a retaliatory motivation, this case falls into the latter category and is not removable under § 1443(1). *See Glanton*, 107 F.3d at 1051.

If the defendants' Fair Housing Act rights have indeed been violated in this case, we believe that the violation can, and must, be heard and remedied in the Illinois courts. The district court's order remanding the case is accordingly

AFFIRMED.